**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AT AUSTIN**

| | |
|---|---|
| **DAVID TOM,** individually and on behalf of all others similarly situated, | Case No. 1:26-cv-125 |
| *Plaintiff,* | **CLASS ACTION** |
| | **JURY TRIAL DEMANDED** |
| *v.* | |
| **SAGAX MEDIA LLC d/b/a SERVICE DIRECT** | |
| **AND** | |
| **FLORIDA HIGH & DRY ROOFING, LLC** | |
| *Defendants.* | |

**CLASS ACTION COMPLAINT
AND DEMAND FOR JURY TRIAL**

Plaintiff David Tom ("Plaintiff") brings this Class Action Complaint and Demand for Jury Trial against Defendants Sagax Media LLC ("Service Direct") and Florida High & Dry Roofing, LLC (Collectively "Defendants") and alleges as follows:

1.     Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms' *id.* § 2(9).

1

2.      "The law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.')…Private suits can seek either monetary or injunctive relief. *Id*…This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people.  The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019).

3.      The Plaintiff brings this action to enforce the consumer-privacy provisions of the TCPA alleging that Defendants violated the TCPA by making telemarketing calls to Plaintiff and other putative class members listed on the National Do Not Call Registry without their written consent as well as calling people who had previously asked to no longer receive calls.

## PARTIES

4.      Plaintiff David Tom is an individual residing in the Middle District of Florida.

5.      Defendant Sagax Media LLC d/b/a Service Direct is an Texas limited liability company who is in the business of making calls and selling leads to home improvement companies like Florida High & Dry Roofing.

6.      Defendant Florida High & Dry Roofing, LLC is a Florida limited liability company.

## JURISDICTION AND VENUE

7.      This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227 *et seq*.

8.      This Court has general personal jurisdiction over Defendant Service Direct because it has its headquarters and principal place of business in this District. This Court has specific jurisdiction over Florida High & Dry because it contracted with a Texas Defendant to send calls across the United States from Texas, and, upon information and belief, signed a contract with Service Direct for such telemarketing conduct with a Texas forum selection clause.

9.      Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial portion of the acts giving rise to the complaint, namely, the illegal telemarketing conduct, took place in this District because the calls and text message calls were sent from this District.

## BACKGROUND

10.     The TCPA prohibits making multiple telemarketing calls to a residential telephone number that has previously been registered on the National Do Not Call Registry. *See* 47 U.S.C. § 227(c)(5).

11.     The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

12.    A listing on the National Do Not Call Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

13.    The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers on the Registry and provide a private right of action against any entity that makes those calls, or "on whose behalf" such calls are promoted. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

<u>The TCPA Also Requires Telemarketers to Transmit Caller Identification Information Including the Telemarketer's Name.</u>

14. The TCPA requires any "person or entity that engages in telemarketing" to "transmit caller identification information." 47 C.F.R. § 64.1601(e).

15. The relevant regulation defines "caller identification information" as "either CPN or ANI, and, when available by the telemarketer's carrier, the name of the telemarketer." 47 C.F.R. § 64.1601(e)(1).

16. A violation of this subsection of the TCPA is enforceable under the private right of action provided for under 47 U.S.C. § 227(c)(5)'s private right of action. *Dobronski v. Selectquote Ins. Servs.*, No. 2:23-CV-12597, 2025 WL 900439, at *3 (E.D. Mich. Mar. 25, 2025).

## **FACTUAL ALLEGATIONS**

17.    Plaintiff David Tom is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

18.    At no point did Plaintiff consent to receiving telemarketing calls or text messages from Defendants Florida High & Dry Roofing or Service Direct prior to receiving the communications at issue.

19.    Plaintiff's telephone number, (904) XXX-XXXX, is a residential, non-commercial telephone number.

20.     Plaintiff uses the telephone number for personal, residential, and household purposes only.

21.     The number is a residential telephone line because it is assigned to a residential telephone exchange service for consumers and is not assigned to a telephone exchange service for businesses.

22.     Plaintiff registered his telephone number on the National Do Not Call Registry on November 9, 2024, and it remained registered at all times relevant herein.

23.     Plaintiff has never been a customer of Defendants and never requested information regarding Defendants' products or services.

24.     Despite that fact, Plaintiff received multiple telemarketing calls.

25.     On December 18, 2025, at approximately 4:00:40 p.m. CST, Plaintiff received an incoming call from telephone number (904) 512-0656, which lasted approximately six minutes and forty-one seconds.

26.     During this call, the Plaintiff was attempted to be sold the Defendants' home improvement services, and was looking to sell the Defendants' roofing work, asking what type of roof the Plaintiff wanted, and other similar questions. The Plaintiff was then transferred to Defendant High & Dry through a live "transfer to the roofing contractor."

27.     The Plaintiff was then played a prerecorded message asking for his ZIP code. After Plaintiff entered his ZIP code, the call was transferred to "Anthony with Florida High & Dry Roofing," who then hung up when the Plaintiff asked Anthony to verify the company name.

28.     On December 18, 2025, at approximately 4:08:19 p.m. CST, Plaintiff received an incoming call from telephone number (321) 366-2276, which lasted approximately five minutes and twenty-three seconds.

29.     During this call, it was "Anthony" calling back again and stated that there was a bad connection. Anthony, Defendant High & Dry's employee then attempted to sell the Plaintiff a roof and asked nearly the same questions.

30.     The calls were placed for the purpose of encouraging the purchase of roofing services and therefore constituted telemarketing.

31.     The calls all came from the following numbers. Counsel for the Plaintiff has access to "dip" the Caller ID database of the calling carrier to ascertain the CNAM information to ascertain (1) whether caller name delivery (CNAM) is available with the Defendant's calling carrier, and (2) whether such CNAM information contained the name of the telemarketer. The results of those dips are as follows:

| Number | CNAM Available? | CNAM Result | Carrier (Spoofed) |
|--------|-----------------|-------------|-------------------|
| 9045120656 | Y | LOCASCIO LINDA | Onvoy (S) |
| 3213662276 | Y | WIRELESS CALLER | Verizon |

32.     As the aforementioned chart shows, the CNAM transmitted by the ultimate telephone carriers provided CNAM functionality, but provided inaccurate CNAM functionality, since Defendants utilized "spoofing" to make the calls appear to come from an innocent resident in one call and from a generic "Wireless Caller", instead of the Defendants' names and numbers.

33.     Indeed, the Defendants appear to have spoofed the first number as will be revealed through discovery, to further hide their identity.

34.     With respect to each of the spoofed numbers listed above, none of the numbers permit a caller to call the number and lodge a do not call request during regular business hours, because they are spoofed to unassigned or innocent individuals' phone numbers. It is not possible to call any of those numbers back to lodge a Do Not Call request during regular business hours with the Defendant.

35.     Upon information and belief, the calls were part of a lead-generation campaign intended to identify and qualify potential customers for roofing services and to transfer those consumers to Defendant Florida High & Dry Roofing.

36.     Plaintiff never provided prior express consent, written or otherwise, to receive telemarketing calls, prerecorded calls, or artificial-voice calls from either Defendant.

6

37.     Following receipt of the calls, Plaintiff sent investigatory correspondence to Defendant Florida High & Dry Roofing.

38.     In a written response to Plaintiff's letter, Defendant Florida High & Dry Roofing admitted that it utilized Service Direct for illegal telemarketing lead generation and stated, in relevant part:

> Our company contracts with reputable lead generation providers who are required by agreement to comply with all telemarketing laws, including honoring Do Not Call requests. . . . However, it appears from your account that a third-party lead provider may have contacted you without our knowledge or consent regarding their specific outreach methods.
>
> We would also like to inform you that, effective immediately, we will no longer be using Service Direct as a lead provider. We were assured by Service Direct that all calls were incoming from individuals specifically requesting roofing services. If you wish to reach out to Service Direct directly regarding their practices, their contact number is 877-978-1099.

39.     Service Direct acted as a lead generator for Florida High & Dry Roofing by placing outbound telemarketing calls to consumers, including Plaintiff, for the purpose of generating roofing leads.

40.     Florida High & Dry Roofing hired and utilized Service Direct to identify potential customers and generate sales opportunities through outbound calling campaigns.

41.     Florida High & Dry Roofing authorized Service Direct to initiate calls to consumers for the purpose of generating leads and transferring those leads to Florida High & Dry Roofing or its representatives.

42.     Florida High & Dry Roofing exercised control over Service Direct by defining the type of acceptable leads, including geographic location, service needs, and customer qualifications.

43.     Florida High & Dry Roofing compensated Service Direct for leads generated, thereby exercising control over the substance and effectiveness of the telemarketing calls.

44.    Florida High & Dry Roofing accepted the benefits of the unlawful telemarketing calls by receiving potential customer leads generated through those calls.

45.    Florida High & Dry Roofing ratified Service Direct's conduct by knowingly accepting and acting upon leads generated through unlawful telemarketing calls, including calls made to numbers listed on the National Do Not Call Registry.

46.    Florida High & Dry Roofing had the authority and ability to terminate, suspend, or adequately supervise Service Direct upon learning of unlawful or noncompliant telemarketing conduct prior to the Plaintiff's calls.

47.    Florida High & Dry Roofing failed to terminate, suspend, or adequately supervise Service Direct.

48.    As such, Florida High & Dry Roofing knowingly ratified, approved, and benefitted from Service Direct's telemarketing conduct.

49.    Under principles of actual authority, apparent authority, and ratification, Defendant Florida High & Dry Roofing is vicariously liable for the unlawful telemarketing calls placed by Service Direct on its behalf.

50.    The calls were unwanted and nonconsensual encounters.

51.    Plaintiff never provided prior express consent to receive telemarketing calls, prerecorded calls, or artificial-voice calls from either Defendant.

52.    Plaintiff's privacy has been repeatedly violated by Defendants' conduct.

53.    Plaintiff was harmed by Defendants' actions because the calls were annoying, harassing, and a nuisance, and they occupied Plaintiff's telephone line, bandwidth, and attention, rendering his phone unavailable for legitimate communications.

## CLASS ACTION ALLEGATIONS

54.    Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

55.     Plaintiff brings this action on behalf of herself and the following classes (the "Class") pursuant to Federal Rule of Civil Procedure 23.

> **National DNC Class:** All persons in the United States whose (1) telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing call or text message from or on behalf of Defendants encouraging the purchase of Defendants' goods or services, (3) within a 12-month period (4) at any time in the period that begins four years before the date of filing this Complaint to trial.

> **Telemarketing Caller ID Class:** All persons within the United States to whom: (1) Defendant (or a third-party acting on behalf of Defendant) sent (2) two or more telemarketing calls in a 12-month period, (3) which either (a) did not transmit caller identification information that included either CPN or ANI and the Defendants' or telemarketer's name, (b) did not transmit a valid CPN or ANI at all, or (c) transmitted a CPN or ANI that would not have allowed an individual to make a do not call request to Defendants during regular business hours, (4) within the four years prior to the filing of the Complaint.

56.     **Numerosity**: The exact number of Class members is unknown but based on the *en masse* nature of telemarketing is believed to be at least hundreds of persons at this time, and individual joinder in this case is impracticable. Class members can be easily identified through Defendants' records, or those of their agents.

57.     **Typicality**: Plaintiff's claims are typical of the claims of other Class members in that Plaintiff, and Class members, sustained damages arising out of Defendants' telemarketing calls and Class members sustained similar injuries and damages as a result of Defendants' uniform illegal conduct.

58.     **Adequacy**: Plaintiff will fairly and adequately represent and protect the interests of the Classes and has retained counsel competent and experienced in complex class actions to

vigorously prosecute this action on behalf of the Classes. Plaintiff has no interests that conflict with, or are antagonistic to those of, the Classes, and Defendants has no defenses unique to Plaintiff.

59.     **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and members of the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to, the following:

a.     Whether Defendants obtained "prior express invitation or permission" under the TCPA, before the calls at issue;

b.     Whether Defendants has established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the TCPA's do-not-call regulations;

c.     Whether Defendants called Plaintiff and other class members with the provision of non-complaint and unlawful caller ID information;

d.     Whether Defendants should be held liable for violations committed on their behalf;

e.     Damages, including whether any violations were performed willfully or knowingly, such that Plaintiff and the other Class members are entitled to treble damages under 47 U.S.C. § 227(c)(5); and

f.     Whether Defendant Florida High & Dry Roofing  Window and Doors is vicariously liable for calls placed by telemarketing vendors, including Service Direct.

60.    **Superiority**: Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein.  Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail.  There are hundreds of Class members in each class, such that joinder of all members is impracticable.

61.    In addition to satisfying the prerequisites of FED. R. CIV. P. 23(a), Plaintiff satisfies the requirements for maintaining a class action under FED. R. CIV. P. 23(b) because:

a.    The prosecution of separate actions by the individual Class members would create a risk of inconsistent or varying adjudication which would establish incompatible standards of conduct for Defendants;

b.    The prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests;

c.    Defendants have acted or refused to act on grounds that apply generally to the proposed Classes, thereby making final injunctive relief or declaratory relief herein appropriate with respect to the proposed Classes as a whole; and

d.    Questions of law or fact common to the members of the Classes predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

## COUNT I

**Violations of the TCPA, 47 U.S.C. § 227**
**(On Behalf of Plaintiff and the National DNC Class)**

62.     Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

63.     It is a violation of the TCPA to initiate any telephone solicitation to a residential telephone subscriber who has registered his or his telephone number on the National Do Not Call Registry. 47 C.F.R. 64.1200(c)(2).

64.     Defendants and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf violated the TCPA by causing multiple telephone solicitation calls to be initiated to Plaintiff and members of the National DNC Class in a 12-month period, despite the person's registration of his or his telephone numbers on the National Do Not Call Registry.

65.     These violations were willful or knowing.

66.     As a result of Defendants and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf's violations of the TCPA's national do-not-call rule, Plaintiff and members of the National DNC Class are each entitled to an injunction and up to $500 in damages for each such violation. 47 U.S.C. § 227(c)(5).

67.     Because such violations were willful or knowing, the Court should treble the amount of statutory damages, pursuant to 47 U.S.C. § 227(c)(5).

**<u>SECOND CAUSE OF ACTION</u>**
**Violation of the Telephone Consumer Protection Act**
**47 U.S.C. § 227(c)(5) & 47 C.F.R. § 64.1601(e)**
**(On behalf of Plaintiff and the Telemarketing Caller ID Class)**

68.     Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

69.    It is a violation of the TCPA to make a telemarketing call without the transmission of caller identification information including either a CPN or ANI and, when available by the telemarketer's carrier, the name of the telemarketer. 47 C.F.R. § 64.1601(e)(1).

70.    It is a violation of the TCPA to transmit a CPN or ANI that does not allow any individual to make a do-not-call request during regular business hours. 47 C.F.R. § 64.1601(e)(1).

71.    Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf violated the TCPA by causing multiple telemarketing calls to be initiated to Plaintiff and members of the Telemarketing Caller ID Class in a 12-month period, without proving a CPN or ANI that allowed any individual to make a do-not-call request during regular business hours, without providing the correct caller ID name as required by law, as well as by using "spoofed" caller IDs that did not allow consumers to lodge a do-not-call request during regular business hours.

72.    These violations were willful or knowing.

73.    As a result of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf's violations of the TCPA's telemarketing Caller ID transmission requirement, Plaintiff and members of the Telemarketing Caller ID are each entitled to an injunction and up to $500 in damages for each such violation. 47 U.S.C. § 227(c)(5).

74.    Because such violations were willful or knowing, the Court should treble the amount of statutory damages, pursuant to 47 U.S.C. § 227(c)(5).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the Class, respectfully request that the Court enter judgment against Defendants for:

A.      Certification of the Classes as alleged herein;

B.      Appointment of Plaintiff as representative of the Classes;

C.      Appointment of the undersigned as counsel for the Classes;

D.      Damages to Plaintiff and members of the Classes pursuant to 47 U.S.C. § 227(c)(5);

E.      Injunctive relief for Plaintiff and members of the Classes, pursuant to 47 U.S.C. § 227(c)(5), preventing the Defendants from making calls to numbers listed on the National Do Not Call Registry or with unlawful and non-compliant caller ID information;

F.      Attorneys' fees and costs, as permitted by law; and

G.      Such other or further relief as the Court deems just and proper.

### **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury.

RESPECTFULLY SUBMITTED AND DATED this 18th day of January, 2026.

*/s/ Andrew Roman Perrong*
Andrew Roman Perrong, Esq.
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com

14