**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AT AUSTIN**

| | |
|---|---|
| **DAVID TOM,** individually and on behalf of all others similarly situated, <br><br> *Plaintiff*, <br><br> v. <br><br> **SAGAX MEDIA LLC d/b/a SERVICE DIRECT** <br><br> **AND** <br><br> **FLORIDA HIGH & DRY ROOFING, LLC**, <br><br> *Defendants.* | Case No. 1:26-cv-125 |

**DEFENDANT SAGAX MEDIA LLC'S
<u>MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS</u>**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................ii

PRELIMINARY STATEMENT ...........................................................................................1

LEGAL STANDARD ...........................................................................................................2

ARGUMENT..........................................................................................................................3

  I.   PLAINTIFF'S CLAIMS FAIL BECAUSE HE RECEIVED ONLY ONE TELEPHONE CALL FROM SAGAX..............................................................................................3

  II.  NO RIGHT OF ACTION EXISTS FOR ALLEGED VIOLATIONS OF THE REGULATIONS AT ISSUE.....................................................................................4

     1.  There Is No Private Right Of Action For Alleged Violations Of 47 C.F.R. § 64.1601(e).........................................................................................4

     2.  There Is No Private Right Of Action For Alleged Violations Of 47 C.F.R. § 64.1200(C)(2) ...............................................................................7

       A.  The Statute Imposes a Deadline By Which § 227(c) Rules Were to be Prescribed .........8

       B.  § 227(c) Imposes Minimum Requirements Not Met By 47 C.F.R. § 64.1200(c)(2)........10

       C.  The FCC's NDNC-Related Regulations Were Prescribed Pursuant to 15 U.S.C. § 6153.............................................................................................12

CONCLUSION ......................................................................................................................17

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................ 3

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................................ 3

*Braver v. Clear Sky Fin., LLC*,
  2023 U.S. Dist. LEXIS 252662 (W.D. Okla. Jan. 3, 2023) ...................................... 6

*Griffin v. American-Amicable Life Ins. Co. of Tex.*,
  2024 U.S. Dist. LEXIS 175344 (D. Or. Sept. 27, 2024)........................................... 6

*Hunsinger v. Dynata LLC*,
  2023 U.S. Dist. LEXIS 37879 (N.D. Tex. Feb. 7, 2023) .......................................... 4

*McCormick v. Ethos Techs.*, 2
  025 U.S. Dist. LEXIS 143114 (E.D. Tex. Jul. 21, 2025)........................................... 5

*Meyer v. Capital All. Grp.*,
  2017 U.S. Dist. LEXIS 183690 (S.D. Cal. Nov. 6, 2017)......................................... 7

*R2 Invs. LDC v. Phillips*,
  401 F.3d 638 (5th Cir. 2005)..................................................................................... 3

*Wilson v. Skopos Fin., LLC*,
  2025 U.S. Dist. LEXIS 138638 (D. Or. July 21, 2025) ............................................ 9

*Worsham v. Disc. Power, Inc.*,
  2021 U.S. Dist. LEXIS 141842 (D. Md. Jul. 29, 2021).............................................. 6

*Worsham v. Travel Options, Inc.*,
  2016 U.S. Dist. LEXIS 118774 (D. Md. Sept. 2, 2016)......................................... 7, 8

**Statutes**

15 U.S.C. § 6101.................................................................................................. xvi
15 U.S.C. § 6102.................................................................................................. xvi
15 U.S.C. § 6108.................................................................................................. xvi
15 U.S.C. § 6151................................................................................................ xviii
15 U.S.C. § 6151(a) ............................................................................................. xvii
15 U.S.C. § 6151(b) ............................................................................................. xvii
15 U.S.C. § 6154................................................................................................ xviii
47 U.S.C. § 227(b) .................................................................................................. ix
47 U.S.C. § 227(b)(2) ............................................................................................ xii
47 U.S.C. § 227(c) .................................................................................................. ix

47 U.S.C. § 227(c)(1) .................................................................................................................. xi
47 U.S.C. § 227(c)(3) ............................................................................................................ xiii, xv
47 U.S.C. § 227(c)(4)(B) ............................................................................................................ xv
47 U.S.C. § 227(c)(5) ................................................................................................................... v
47 U.S.C. § 227(d)(2) ................................................................................................................ xii
47 U.S.C. § 227(d)(3) ................................................................................................................ xii
47 U.S.C. § 227(e)(3) ................................................................................................................ xii
47 U.S.C. § 227(i)(1) ................................................................................................................. xii
47 U.S.C. § 227(j)(1) ................................................................................................................. xii

## Other Authorities

64 FR 66124 (Nov. 24, 1999) .................................................................................................... xvi
67 FR 4492 (2002) .................................................................................................................... xvii
67 FR 62667 (1992) ................................................................................................................. xiii
68 FR 4580 (2003) .................................................................................................................... xvii
7 FCC Rcd. 2736 (1992) ............................................................................................................ xi
CC Docket No. 92-90 ................................................................................................................ xi

## Regulations

47 C.F.R. § 64.1601(e) ............................................................................................................. vii

Defendant Sagax Media LLC d/b/a Service Direct ("Sagax" or "Defendant"), moves to dismiss the putative Class Action Complaint (ECF No. 1; "Complaint") filed by Plaintiff David Tom ("Plaintiff" or "Tom") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP") for failure to state a claim under the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA"). For the reasons detailed below, the Court must dismiss the Complaint.

## PRELIMINARY STATEMENT

Tom brings a putative class action against Sagax and Florida High & Dry Roofing, LLC ("HDR"), alleging violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA") and seeking monetary, injunctive, and declaratory relief. His claims are brought pursuant to section 227(c)(5) of the TCPA, purporting to arise out of violations of 47 C.F.R. §§ 64.1200(c) and 64.1601(e). However, Tom's claims are subject to dismissal as a matter of law pursuant to Fed. R. Civ. P. 12(b)(6) for the following reasons:

First, Plaintiff lacks statutory standing to sue Sagax pursuant to 47 U.S.C. § 227(c)(5). Whereas that provision confers a right of action only to persons who have "received ***more than one telephone call*** within any 12-month period ***by or on behalf of the same entity*** in violation of the regulations prescribed under this subsection" (emphasis added), the Complaint alleges that Plaintiff received only a single telephone call by or on behalf of Sagax.  While Tom alleges the receipt of two phone calls, he alleges that the first call was from Sagax but that the second call was placed directly by HDR - who called Plaintiff back after being disconnected from the first call, a call which was alleged to have been transferred to HDR by Sagax. (*see* ECF No. 1 ¶¶ 25-29). This amounts to one call received by or on behalf of Sagax, which is insufficient to state a claim pursuant to 47 U.S.C. § 227(c)(5). The Complaint against Sagax must be dismissed accordingly.

Second, there is no private right of action for alleged violations of 47 C.F.R.

1

§ 64.1601(e). While the TCPA provides a private right of action under subsections (b) and (c), no such private right of action exists subsection (d), which is the subsection from which the Federal Communications Commission ("FCC") derived authority to prescribe 47 C.F.R. § 64.1601(e).

Third, there is no private right of action for alleged violations of 47 C.F.R. § 64.1200(c). 47 U.S.C. § 227(c)(5) provides a right of action to any person who "has received more than one telephone call within any 12-month period by or on behalf of the same entity *in violation of the regulations prescribed under **this subsection**"* (emphasis added). However, 47 C.F.R. § 64.1200(c) was not prescribed pursuant to 47 U.S.C. § 227(c). Rather, it was prescribed pursuant to 15 U.S.C. § 6153, and that statute does not provide a private right of action.

## LEGAL STANDARD

To survive a motion to dismiss, a pleading "must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). A claim should only be considered facially plausible when "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *see also R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (stating that the Court should neither "strain to find inferences favorable to plaintiffs" nor accept "conclusory allegations, unwarranted deductions, or legal conclusions"). To satisfy the plausibility standard, Plaintiff must set forth "more than a sheer possibility that a defendant has acted unlawfully." *Id*. While a plaintiff is not obligated to plead factual allegations in great detail, "a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

2

## ARGUMENT

### I.   PLAINTIFF'S CLAIMS FAIL BECAUSE HE RECEIVED ONLY ONE TELEPHONE CALL FROM SAGAX

The Complaint's allegations demonstrate that both of Tom's claims fail for a remarkably simple, but decisive, reason – he alleges receipt of only a single telephone call by or on behalf of Sagax. This is fatal to his claims pursuant to 47 U.S.C. § 227(c)(5) and requires dismissal of the Complaint against Sagax.

47 U.S.C. § 227(c)(5) provides a limited right of action only to:

> "A person who has received ***more than one telephone call*** within any 12-month period ***by or on behalf of the same entity*** in violation of the regulations prescribed under this subsection . . ."

(emphasis added).

Plaintiff's lack of statutory standing under the provision is spelled out by the pleading itself.

The first of the two calls identified in the Complaint is alleged to have come from telephone number (904) 512-0656 and that during this call, Plaintiff was transferred to Defendant High & Dry through a live "transfer to the roofing contractor" whereupon he was transferred to "Anthony from Florida High & Dry Roofing" (*see* ECF No. 1 ¶¶ 25-27). This first call is alleged to have lasted approximately seven (7) minutes. *Id.* The second of the two calls, allegedly received less than eight (8) minutes after the first (i.e., approximately 1 minute following the conclusion of the first call) is alleged to have come from telephone number (321) 366-2276, and which Plaintiff alleges was "Anthony' calling back again'" and that on the call "Anthony, Defendant High & Dry's employee . . . attempted to sell the Plaintiff a roof." *Id.* ¶¶ 28-29.

Thus, a plain reading of Plaintiff's own allegations leads to the conclusion that, with respect to the claims against Sagax, he has failed to satisfy the threshold requirements of 47 U.S.C. § 227(c)(5).  He admitted that the second of the two calls at issue came from an entity other than

3

Sagax and that this other entity attempted to market its own services. This is insufficient to satisfy statutory standing for the claim against *Sagax*. *See Hunsinger v. Dynata LLC*, 2023 U.S. Dist. LEXIS 37879, at *18 (N.D. Tex. Feb. 7, 2023), *report and recommendation adopted*, 2023 U.S. Dist. LEXIS 36524 (N.D. Tex. Mar. 4, 2023) ("[a] cause of action under this regulation [47 C.F.R. § 64.1200(c)] is only available to individuals who [have] received more than one telephone call within any 12-month period by or on behalf of the same entity"); *see also McCormick v. Ethos Techs.*, 2025 U.S. Dist. LEXIS 143114, at *3 (E.D. Tex. Jul. 21, 2025) ("To successfully plead a violation under section 227(c) for a DNC list violation, a plaintiff must allege (1) the receipt of more than one telephone call or message within any 12-month period, (2) made by or on behalf of the same entity, (3) to a phone number registered on the DNC list.") (internal quotations omitted).

Because Plaintiff pleads the receipt of only a single phone call by or on behalf of Sagax, his claims against Sagax pursuant to 47 U.S.C. § 227(c)(5) fail and, accordingly, the Complaint must be dismissed as to Sagax.

## II.   NO RIGHT OF ACTION EXISTS FOR ALLEGED VIOLATIONS OF THE REGULATIONS AT ISSUE

### 1.   There Is No Private Right Of Action For Alleged Violations Of 47 C.F.R. § 64.1601(e)

Unlike subsections (b) and (c) of the TCPA, which expressly create private rights of action, subsection (d) does not. The conspicuous absence of a private right action within subsection (d) clearly evinces that Congress did not intend for private parties to enforce either section 227(d) or the regulations prescribed thereunder. Accordingly, because 47 C.F.R. § 64.1601(e) was prescribed by the FCC pursuant to authority conferred on it through 47 U.S.C. § 227(d), Plaintiff's claim for alleged violation of 47 C.F.R. § 64.1601(e) must be dismissed.

As relevant to Plaintiff's claim, 47 C.F.R. § 64.1601(e)(1) states as follows:

4

> "Any person or entity engaging in telemarketing, as defined in § 64.1200(f)(15), must transmit caller identification information to a caller identification service. For these purposes, caller identification information must include either the Calling Party Number (CPN) or the Automatic Number Identification (ANI) and, when made available by the telemarketer's carrier, the name of the telemarketer to a caller identification service. The telephone number so provided must permit any person to make a do-not-call request during regular business hours."

Many courts that have examined the question of whether there is a private right of action to enforce this regulation have concluded that one does not exist. This conclusion has been rooted in the determination that 47 C.F.R. § 64.1601(e) was promulgated pursuant to TCPA subsection (d), under which there is no private right of action. See *Griffin v. American-Amicable Life Ins. Co. of Tex.,* 2024 U.S. Dist. LEXIS 175344, at *15 (D. Or. Sept. 27, 2024) (granting dismissal and finding that there is no private right of action under 47 C.F.R. § 64.1601(e)); see also *Braver v. Clear Sky Fin., LLC*, 2023 U.S. Dist. LEXIS 252662, at *11 (W.D. Okla. Jan. 3, 2023) (finding that there is no private right of action for alleged violations of 47 C.F.R. § 64.1601(e)); *Worsham v. Disc. Power, Inc.,* 2021 U.S. Dist. LEXIS 141842, at *11 (D. Md. Jul. 29, 2021) (granting dismissal of § 64.1601(e)(1) claim on the grounds that a violation of technical and procedural standards under subsection (d)); *Meyer v. Capital All. Grp.*, 2017 U.S. Dist. LEXIS 183690, at *44-45 (S.D. Cal. Nov. 6, 2017) (declining to create a private right of action where none was expressly created); *Worsham v. Travel Options, Inc.*, 2016 U.S. Dist. LEXIS 118774, at *4 (D. Md. Sept. 2, 2016), aff'd, 678 F. App'x 165 (4th Cir. 2017).

The persuasiveness of those courts' reasoning is seen through an examination of both the TCPA and the regulation itself. Notably, the TCPA's structure is one that demonstrates a fundamental distinction between conduct statutorily defined to be a consumer privacy violation on the one hand and technical or technological mandates on the other. It is the former of these that

5

give rise to rights of action through subsections (b) and (c), while the latter of these do not (subsections (d), (e), (i), and (j)).  By establishing this bifurcated enforcement structure, Congress explicitly created distinct statutory mechanisms for distinct categories of conduct. The common denominator is that generally, TCPA regulations are enforceable through a private right of action when they govern conduct involving direct contact with a call recipient. Conversely, those that regulate technical or procedural standards—which do not involve direct contact—lack such a private mechanism.

47 C.F.R. § 64.1601(e) clearly falls into the latter category of regulations, as it imposes a mandate on telemarketers but only insofar as it concerns the transmission of information to a caller identification service. A call recipient's receipt of a downstream benefit of a telemarketer's compliance with a regulation, however, does not automatically equate with a private right of action to enforce alleged non-compliance with it.  And it is for this reason that the courts which have ultimately concluded that there is no private right of action for alleged violations of 47 C.F.R. § 64.1601(e) have done so upon the conclusion that "the FCC's rule in § 64.1601(e) appears to *support* consumers' enforcement efforts under the TCPA's subsection c, rather than to *create* a separate mechanism upon which a consumer can make an actionable claim." *Worsham v. Travel Options, Inc.*, 2016 U.S. Dist. LEXIS at *12.

47 C.F.R. § 64.1601(e) is a regulation concerning the technology utilized to route and identify telecommunications. Because its mandates concern how telecommunications systems must format and transmit data (including CPN and ANI information) across public telephone networks, it falls squarely within the technical and procedural boundaries of 47 U.S.C. § 227(d), rather than the consumer-oriented provisions of either of 47 U.S.C. §§ 227(b) or (c).  And because 47 U.S.C. § 227(d) does not confer a private right of action for alleged violations of the regulation

6

prescribed thereunder, Plaintiff lacks standing to assert a claim for alleged violation of 47 C.F.R. § 64.1601(e). The Court must dismiss the claim accordingly.

> **2.    There Is No Private Right Of Action For Alleged Violations Of 47 C.F.R. § 64.1200(C)(2)**

Among the TCPA's two primary regulatory provisions, 47 U.S.C. § 227(c) is demonstrably narrower than 47 U.S.C. § 227(b).  The breadth of 47 U.S.C. § 227(b) is apparent in that it <u>first</u> applies to *any* call placed with either automated or prerecorded or artificial message technology; <u>second</u> provides a private of action to *any* recipient of such a call placed without his/her prior express consent; <u>third</u> affords the private right of action to the recipient of a single call; and <u>lastly</u> confers upon the FCC perpetual rulemaking authority to prescribe regulations to implement the subsection.

In contrast, Section 227(c)'s limited scope is evidenced in the following ways: <u>first</u>, it clearly and unambiguously applies to only one particular kind of call (telephone solicitations) rather than to any call whatsoever; <u>second</u>, it only confers a private right of action upon recipients of two or more telephone calls placed in violation of regulations prescribed pursuant to the subsection (i.e., the receipt of a single call is not enough for statutory standing under Section 227(c), even if the call violates a relevant regulation); <u>third</u>, the receipt of those two or more telephone calls must have occurred within the same 12-month timeframe; and <u>fourth</u>, it confers rulemaking authority upon the FCC that contains both procedural and substantive constraints.  On the procedural front, the statute expressly imposes a deadline by which such regulations must be prescribed.  As to its substantive constraints, Congress dictated minimum substantive requirements which were mandated of certain such regulations prescribed pursuant to that grant of authority, including regulations concerning establishment and operation of a national database of telephone numbers of residential subscribers who object to receiving telephone solicitations.

The difference in breadth and scope between § 227(b) and § 227(c) is unsurprising. When Congress enacted the TCPA, it considered automated telephone calls to be a far greater concern than live solicitations. *Wilson v. Skopos Fin., LLC*, 2025 U.S. Dist. LEXIS 138638, at *11 (D. Or. July 21, 2025) ("Congress found that automated prerecorded telephone calls were a greater nuisance and invasion of privacy than live solicitation calls") (internal citation omitted). That difference in concern is reflected by the limiting language throughout § 227(c).  And flowing from that limiting language is the conclusion that the TCPA does not provide a private right of action for alleged violations of 47 C.F.R. § 64.1200(c)(2).

### A.  The Statute Imposes a Deadline By Which § 227(c) Rules Were to be Prescribed

In two separate provisions, Congress unequivocally limited the FCC's rulemaking authority under 47 U.S.C. § 227(c) in a manner that imposed a deadline by which the FCC was to prescribe § 227(c) regulations.

First, 47 U.S.C. § 227(c)(1) provides that "[w]ithin 120 days after enactment of this section [enacted Dec. 20, 1991], the Commission shall initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object."

Second, 47 U.S.C. § 227(c)(2) then goes on to provide that "[n]ot later than 9 months after the date of enactment of this section [enacted Dec. 20, 1991], the Commission shall conclude the rulemaking proceeding initiated under paragraph (1) and shall prescribe regulations to implement methods and procedures for protecting the privacy rights described in such paragraph . . ."

Through these two sections, Congress imposed two deadlines upon the FCC: (1) a rulemaking proceeding was to be initiated no later than April 18, 1992; and (2) that rulemaking proceeding was to be concluded and regulations to implement methods and procedures for

8

protecting the privacy rights described in 47 U.S.C. § 227(c)(1) were to be prescribed no later than September 20, 1992.

Subsequent to the TCPA's enactment, on April 17, 1992, the FCC initiated a Notice of Proposed Rulemaking in which it proposed and sought comment on certain TCPA-related regulations. *See* 7 FCC Rcd. 2736 (1992). Thereafter, on September 17, 1992, the FCC adopted the initial rules to implement the TCPA, which were subsequently released on October 16, 1992 and published in the federal register thereafter on October 23, 1992. *See* FCC 92-443 and CC Docket No. 92-90. These rules comprise the universe of rules permissibly prescribed pursuant to the statutory authority conferred on the FCC under § 227(c). Any other rules purporting to implement § 227(c) but which were (i) prescribed pursuant to a rulemaking proceeding which was initiated later than April 18, 1992 and/or (ii) promulgated later than September 20, 1992, were enacted by the FCC in excess of authority conferred upon it by the Congress to implement § 227(c).

The TCPA's other operative subsections demonstrate that Congress deliberately imposed the deadline set by § 227(c). One need only compare and contrast the time limitations included in §§ 227(c)(1) and (2) with the broad, perpetual grant of rulemaking authority of § 227(b)(2) ("The Commission shall prescribe regulations to implement the requirements of this subsection."), § 227(d)(2) ("The Commission shall revise the regulations setting technical and procedural standards for telephone facsimile machines to require . . ."), § 227(d)(3) ("The Commission shall prescribe technical and procedural standards for systems that are used to transmit any artificial or prerecorded voice message via telephone."), and § 227(e)(3) ("The Commission shall prescribe regulations to implement this subsection.").

The time-limited rulemaking authority of § 227(c) shares a much closer resemblance to the rulemaking authority conferred by § 227(i)(1) and § 227(j)(1), both of which also contain specific

deadlines by which Congress mandated any rules pursuant to those grants of authority be prescribed. *See* § 227(i)(1) ("Not later than 18 months after the date of the enactment of this subsection [enacted Dec. 30, 2019], the Commission shall prescribe regulations to establish a process that streamlines the ways in which a private entity may voluntarily share with the Commission information relating to . . .") and § 227(j)(1) ("Not later than 1 year after the date of the enactment of this subsection [enacted Dec. 30, 2019], shall take a final agency action to ensure the robocall blocking services provided on an opt-out or opt-in basis pursuant to the Declaratory Ruling of the Commission in the matter of Advanced Methods to Target and Eliminate Unlawful Robocalls (CG Docket No. 17-59; FCC 19-51; adopted on June 6, 2019).").

### B.  § 227(c) Imposes Minimum Requirements Not Met By 47 C.F.R. § 64.1200(c)(2)

While 47 U.S.C. § 227(c)(3) delegates discretion to the FCC as to whether to prescribe regulations requiring the establishment and operation of a national do-not-call registry ("NDNC"), the provision also imposes a series of conditions upon the FCC if the FCC were to exercise that discretion in the affirmative.

First, § 227(c)(3) mandates that that any regulations establishing and/or operating the NDNC, if prescribed, were to be prescribed among the regulations required by 47 U.S.C. § 227(c)(2), which in turn were to be prescribed not later than 9 months after the TCPA's enactment. The FCC exercised its discretion at the completion of the rulemaking mandated by § 227(c)(1) and unambiguously opted not to include an NDNC among the regulations mandated by § 227(c)(2), later describing the basis for that decision as follows: "[i]n declining to adopt a national do-not-call list in 1992, the Commission concluded that a national database would be costly and difficult to establish and maintain in a reasonably accurate form.  The Commission found that frequent updates would be required, regional telemarketers would be forced to purchase a national database, costs might be passed on to consumers, and the information compiled would

10

present problems in protecting consumer privacy." 67 FR 62667 , *62676 ¶ 41 (1992).

Substantive conditions were also imposed. Specifically, while § 227(c)(3) generally leaves to the FCC's discretion the decision as to whether to establish an NDNC ("The regulations required by paragraph (2) *may* require the establishment and operation of a single national database . . .") (emphasis added), it makes clear that in the event that the FCC exercises that discretion in favor of establishing the NDNC, then the regulations must meet certain minimum requirements. ("If the Commission determines to require such a database, such regulations *shall* . . .") (emphasis added). However, just as promulgation of § 64.1200(c)(2) in 2003 did not comply with § 227(c)'s time constraints imposed by Congress, it (and the other NDNC-related regulations in § 64.1200) similarly do not comply with the substantive conditions imposed by §§ 227(c)(3)(A)-(L) and (4)(A)-(C).

Among the mandatory minimum requirements absent from both 47 C.F.R. § 64.1200 generally, and subsection (c)(2) thereof specifically, are the following:

- Specification of a method by which the FCC would select an entity to administer the database [§ 227(c)(3)(A)];

- Specifications of the methods by which telephone subscriber objections shall be collected and added to the database [§ 227(c)(3)(D)];

- Prohibitions against residential subscribers from being charged for giving or revoking of objections to telephone solicitations or for being included in the database [§ § 227(c)(3)(E)];

- Specifications regarding the methods by which a person desiring to make or transmit telephone solicitations will obtain access to the database, by area code or local exchange prefix, to avoid calling the telephone numbers included in the database, and the costs to be recovered from such person [§ 227(c)(3)(G)];

11

- Specifications regarding the methods for recovering, from persons accessing the database, the costs involved in identifying, collecting, updating, disseminating, and selling, and other activities relating to, the operations of the database that are incurred by the entities carrying out those activities [§ 227(c)(3)(H)]; and

- Specifications regarding the frequency with which the database will be updated and the method by which such updating will take effect for purposes of compliance with the database-related regulations [§ 227(c)(3)(I)];

Section 227(c)(4) continues, using "[t]he Commission shall" language to impose additional minimum requirements for regulations "[i]f the Commission determines to require the database mechanism described in paragraph (3)." Again, the FCC's NDNC-related regulations fail to comply with the statute. This failure is borne out through 47 C.F.R. § 64.1200's lack of provision for the requirements imposed by § 227(c)(4)(B), to wit, develop[ment] of a fee schedule or price structure for recouping the cost of such database that recognizes the differences [of telemarketers that conduct business on a national, regional, State, or local level] and (i) reflect[s] the relative costs of providing a national, regional, State, or local list of phone numbers of subscribers who object to receiving telephone solicitations; and (ii) reflect[s] the relative costs of providing such lists on paper or electronic media . . ."

The reason for the FCC's failure to comply with the minimum requirements set forth in §§ 227(c)(3) and (4) when prescribing its NDNC-related regulations is straightforward. As explained in the following section, the FCC's NDNC-related regulations were not prescribed pursuant to a grant of authority by § 227(c), but rather were prescribed pursuant to a later grant of authority by 15 U.S.C. § 6153, which does not contain any of the minimum requirements enumerated by § 227(c)(3) or (4).

### C. The FCC's NDNC-Related Regulations Were Prescribed Pursuant to 15 U.S.C. § 6153

In the FCC's 1992 Report and Order, it stated that "[t]he NPRM in this proceeding requested comments on proposed regulations implementing the TCPA and comments on several proposals restricting telephone solicitations to residential telephone subscribers. The Commission has considered all comments and has adopted regulations to implement the prohibitions and technical requirements mandated by the TCPA as well as regulations which allow consumers to avoid unwanted telephone solicitations through placement on company-specific do-not-call lists." FCC 92-443.

Congress provided the FCC with discretion over the decision of whether or not to establish the NDNC. The agency exercised that discretion and opted not to establish one within the time permitted by Congress to do so. In response to the FCC's exercise of that discretion, Congress took independent steps which ultimately culminated in the NDNC's creation. These steps demonstrate that the FCC's authority to promulgate NDNC-related regulations arose not from the TCPA but from separate statutory authority.

First, Congress enacted the Telemarketing and Consumer Fraud and Abuse Prevention Act (15 U.S.C. § 6101 et seq.) (the "Telemarketing Act"). The Telemarketing Act, among other things, directs the Federal Trade Commission ("FTC") to issue a rule prohibiting both deceptive and abusive telemarketing acts or practices. *See* 15 U.S.C. § 6102(a). That rule became known as the Telemarketing Sales Rule, 16 C.F.R. § 310.1 et seq. ("TSR"). Among the provisions of the TSR, as initially prescribed, was a company-specific do-not-call provision at § 310.4(b)(1)(ii) similar to that which had been prescribed by the FCC in its 1992 rulemaking.

The Telemarketing Act directed the FTC to conduct a review of the TSR five years after its promulgation and to report the results of the review to Congress. *See* 15 U.S.C. § 6108. As part of that mandatory review, the FTC published in the Federal Register a notice indicating that it

13

would conduct a forum examining issues related to the TSR's do-not-call provision. *See* 64 FR 66124 (Nov. 24, 1999).

Notably, in contrast to the time-limited grant of rulemaking authority Congress delegated in 47 U.S.C. § 227(c), the Telemarketing Act confers perpetual rulemaking authority on the FTC. *See* 15 U.S.C. § 6102(a)(1) ("The Commission shall prescribe rules prohibiting deceptive telemarketing acts or practices and other abusive telemarketing acts or practices."). Thus, based on the record developed during the FTC's TSR Rule Review, including from the do-not-call related forum, the FTC published a Notice of Proposed Rulemaking on January 30, 2002 proposing revisions to the TSR, among which included the creation of a national do-not-call registry. *See* 67 FR 4492 (2002). The subsequent Final Rule effectuating the proposed revisions and formally establishing the NDNC was published on January 29, 2003. *See* 68 FR 4580 (2003).

Against a backdrop of uncertainty as to the FTC's legal authority to establish a national do-not-call registry, Congress took its second step on March 11, 2003 by enacting the Do Not Call Implementation Act (the "DNC Act"). *See* Public Law 108-10; 15 U.S.C. § 6151 *et seq*. And to settle that uncertainty, the DNC Act first expressly states at 15 U.S.C. § 6151(a) that the FTC has the authority to implement and enforce a national do-not-call registry pursuant to the Telemarketing Act (*see* 15 U.S.C. § 6151(a)); and thereafter, expressly states at 15 U.S.C. § 6151(b) that the provision of the TSR which had been amended to establish the NDNC (16 C.F.R. § 310.4(b)(1)(iii)) was formally ratified.

In recognition that the FTC's jurisdiction over telemarketing is limited in scope and does not extend to common carriers (such as telephone companies and airlines), insurance companies, banks, credit unions, political solicitations, or intrastate telemarketing calls, the DNC Act expressly mandates regulations from the FCC so that if one of those entities not covered by the

14

TSR's NDNC rule were to make an offending call, a prospective violation would not otherwise fall through the cracks. Thus, 15 U.S.C. § 6153 confers on the FCC explicit rulemaking authority. While similar to 47 U.S.C. § 227(c) as far as providing a deadline by which the FCC was to promulgate rules contemplated by Congress, 15 U.S.C. § 6153 differs from § 227(c) as far as it confers mandatory (rather than discretionary) NDNC-related rulemaking authority, providing that "the Federal Communications Commission shall issue a final rule."

In order to ensure that the FCC could meet § 6153's deadline to prescribe the rules mandated by the statute, Congress identified an ongoing rulemaking proceeding that the FCC had initiated prior to the DNC Act's enactment, and directed that it be the vehicle through which the FCC prescribed the mandatory NDNC-related regulations. Similarly, Congress recognized both that the deadline by which the FCC could prescribe NDNC-related regulations in compliance with §227(c)(3) and (4) had lapsed, and that with that lapse, the FCC's statutory authority to promulgate rules effectuating the goals of those provisions had expired. Therefore, Congress in the DNC Act statutorily provided solutions to the NDNC-related cost considerations that the FCC had previously been tasked with in §§ 227(c)(3) and (4) but had exercised discretion not to regulate within the enumerated timeline, including the setting of a fee schedule. *See* 15 U.S.C. § 6154.

Notably, whereas 15 U.S.C. § 6151 explicitly cited the independent statutory authority pursuant to which Congress sanctioned the FTC's NDNC-related rulemaking, 15 U.S.C. § 6153's grant of rulemaking authority to the FCC does not reference § 227(c) as the statutory basis pursuant to which the FCC's NDNC-related regulations would arise. In fact, § 6153's only reference to the TCPA is as a descriptor of the rulemaking proceeding that the FCC had initiated prior to the DNC Act's enactment and through which the FCC was to prescribe the regulations mandated by the DNC Act.

The resulting conclusion is that the FCC prescribed the NDNC-related regulations contained in 47 C.F.R. § 64.1200 pursuant to the rulemaking authority conferred on it by 15 U.S.C. § 6153, not pursuant to any rulemaking authority conferred by 47 U.S.C. § 227(c). Nevertheless, the DNC Act does not provide for an independent private right of action. It simply (i) ratifies the FTC's establishment of the NDNC and prohibits expiration of a subscriber's registration of his/her telephone number on the registry, (ii) implements a funding mechanism and corresponding fee schedule, (iii) imposes reporting requirements on the FTC and FCC, and (iv) directs the FCC to prescribe regulations that maximize consistency with the FTC's NDNC-regulations to ensure that compliance obligations flow to entities which telemarket but are otherwise not subject to the limited FTC telemarketing jurisdiction.

Consequently, no private right of action exists for alleged violation of 47 C.F.R. § 64.1200(c)(2), and Plaintiff's claims purporting to arise from alleged violation of that regulation must be dismissed as a result.

## **CONCLUSION**

For the foregoing reasons, Sagax respectfully requests that the Court grant this motion, dismiss the Complaint, award Sagax fees and costs to the fullest extent permitted by law, and grant Sagax such further and additional relief as the Court deems just and proper.

DATED:  June 8, 2026

Respectfully submitted,

KLEIN MOYNIHAN TURCO LLP

*Attorneys for Sagax Media LLC d/b/a*
*Service Direct*

By: /s/ *Neil E. Asnen*
Neil E. Asnen (*pro hac vice* application forthcoming)
New York Bar. No. 4785184
450 7th Avenue – 40th Floor
New York, NY 10123
Telephone: (212) 246-0900
Email: nasnen@kleinmoynihan.com

-and-

VARTABEDIAN KATZ, HESTER & HAYNES

By: /s/ *Richard B. Roper*
Richard B. Roper
Texas Bar No. 17233700
2200 Commerce St. Ste 4200W
Dallas, TX 75201
Telephone: (817) 309-9092
Email: richard.roper@vkhh.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 8, 2026, I electronically filed with the Clerk of Court the foregoing document using the CM/ECF system which will send notification of such filing(s) to all counsel of record.


/s/ *Richard B. Roper*
Richard B. Roper

18