**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AT AUSTIN**

| | |
|---|---|
| DAVID TOM, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>SAGAX MEDIA LLC d/b/a SERVICE DIRECT and<br>FLORIDA HIGH & DRY ROOFING, LLC,<br><br>*Defendants*. | Case No. 1:26-cv-125<br>CLASS ACTION<br>JURY TRIAL DEMANDED |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT SAGAX MEDIA LLC'S
MOTION TO DISMISS**

**INTRODUCTION**

Defendant Sagax Media LLC d/b/a Service Direct ("Sagax") moves to dismiss Plaintiff's Complaint on three theories: (1) that Plaintiff received only one telephone call attributable to Sagax, defeating statutory standing under 47 U.S.C. § 227(c)(5); (2) that there is no private right of action for violations of the National Do Not Call Registry provision, 47 C.F.R. § 64.1200(c)(2); and (3) that there is no private right of action for violations of the Caller ID regulation, 47 C.F.R. § 64.1601(e). None of these arguments have merit.

First, the Complaint plausibly alleges that Plaintiff received more than one telemarketing call placed by or on behalf of Sagax, and Sagax's contrary reading asks the Court to draw inferences in its own favor rather than Plaintiff's, contrary to the governing pleading standard. Second, 47 C.F.R. § 64.1200(c)(2) was unquestionably promulgated under 47 U.S.C. § 227(c), which explicitly and unambiguously confers a private right of action. Third, the overwhelming

1

and rapidly growing weight of authority, representing every court to have closely examined the question over the past year, holds that 47 C.F.R. § 64.1601(e) was likewise promulgated under Section 227(c) and is therefore privately enforceable under Section 227(c)(5). The Motion should be denied in its entirety.

## LEGAL STANDARD

To survive a motion to dismiss, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). At the pleading stage, however, the Court must accept Plaintiff's factual allegations as true and draw all reasonable inferences in favor of the nonmoving party. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). A complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to give a defendant fair notice of the claim and the grounds on which it rests. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## ARGUMENT

I.   **THE COMPLAINT PLAUSIBLY ALLEGES THAT PLAINTIFF RECEIVED MORE THAN ONE TELEMARKETING CALL BY OR ON BEHALF OF SAGAX.**

Section 227(c)(5) confers a private right of action on a "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection." 47 U.S.C. § 227(c)(5). Sagax does not dispute that Plaintiff's number was registered on the National Do Not Call Registry, nor that Plaintiff received two telemarketing calls concerning the identical roofing replacement solicitation within eight minutes of each other, on the same day. (ECF No. 1 ¶¶ 25-29.) Sagax's sole argument is that only the first of those two calls can be attributed to it, because the second

2

call was answered by "Anthony," whom Sagax casts as an employee of co-defendant Florida High & Dry Roofing, LLC ("HDR") acting on his own initiative, wholly disconnected from Sagax. ECF No. 12 at 3. That argument asks the Court to draw an inference in *Sagax's* favor, that the callback was entirely severed from the very solicitation Sagax set in motion, rather than in Plaintiff's, as the pleading standard requires.

### A. *The Complaint plausibly alleges that both calls were part of a single, continuous telemarketing transaction that Sagax initiated and facilitated.*

Viewed as a whole, and with all reasonable inferences drawn in Plaintiff's favor, the Complaint alleges a single, uninterrupted telemarketing transaction, not two unrelated calls. The first call came from a spoofed number, was answered, and lasted nearly seven minutes. (ECF No. 1 ¶ 25, 32.) During that call, Plaintiff was solicited for roofing replacement work, played a prerecorded message requesting his ZIP code, and then transferred on the call to "Anthony with Florida High & Dry Roofing," which lends support to the inference that the calls originated as part of an unbroken sequence engineered by Sagax's own telephone system. (*Id*. ¶¶ 26-27.) When Plaintiff asked Anthony to verify the company's name, Anthony hung up. (*Id*. ¶ 27.) Eight minutes later, not eight days or eight months, Anthony called Plaintiff back, from a different number, claiming there had been "a bad connection," and picked up the same sales qualification questions he had just been asking. (*Id*. ¶¶ 28-29.)

Courts recognize that this kind of "smooth transfer" between callers "shows a cooperative relationship from which one may infer authority or apparent authority." *Doyle v. GoHealth, LLC*, No. CV 22-04291, 2023 WL 11900257, at *3 (D.N.J. Dec. 7, 2023) (quoting *Landy v. Nat. Power Sources, LLC*, No. 321CV00425PGSTJB, 2022 WL 797967, at *3 (D.N.J. Mar. 16, 2022)). The same logic controls here. Sagax's own live transfer connected Plaintiff to Anthony in the first place after the prerecorded ZIP code prompt, and the immediate hand off to "the

3

roofing contractor" reflects a coordinated system, whereby Sagax would place the calls and then transfer them to contractors like HDR. (ECF No. 1 ¶¶ 26-27.) When that system's transfer was interrupted, right after Plaintiff, reasonably, asked who was calling him, the same salesperson called back within minutes to finish what Sagax's own call had started and referenced a technical error in that very same system. A callback that resumes mid-transaction, on the heels of a live transfer Sagax itself orchestrated, is not plausibly a new and independent solicitation untethered to the first. It is, at the pleading stage, the continuation of the very transaction Sagax caused to occur, that is, a call made "on behalf of" Sagax within the meaning of the statute.

That inference is reinforced by HDR's own admissions. In its written response to Plaintiff's pre-suit correspondence, HDR, Sagax's own client, stated that Sagax had "assured" HDR that "all calls were incoming from individuals specifically requesting roofing services," and announced that, "effective immediately," it would no longer use Sagax "as a lead provider." (ECF No. 1 ¶ 38.) Those admissions confirm that Sagax was not a passive, disinterested bystander to what happened after the initial transfer. Sagax represented to HDR that the leads it generated, including the qualification and hand-off that produced the Anthony conversation, were legitimate (despite being facially spoofed), and HDR relied on those representations in accepting and acting on the calls Sagax generated. (*Id*. ¶¶ 39-45.) At the very least, these facts plausibly support the inference that the callback was made as part of, and in furtherance of, the same lead generation engagement between Sagax and HDR that produced the first call, i.e., "on behalf of" Sagax.

Moreover, the fact that the Plaintiff alleges that the first call was "spoofed" lends credence to the inference that it is possible that Sagax called him even before the first call. However, without the benefit of discovery, Plaintiff has no way of attributing other "spoofed"

4

calls he received around this same time selling roofing services to Sagax because the telephone numbers were "spoofed" and randomized to hide the identity of the caller.  At the pleading stage, Plaintiff is not required to provide a transcript of each call, identify each possible call from Sagax that would have been spoofed, or detail every word spoken. Rather, Plaintiff must allege facts that allow a reasonable inference that the calls were solicitations. Plaintiff has done so and this is more than enough to warrant that the parties continue to discovery. *See*, e.*g. Martin v. Bottom Line Concepts, LLC*, 723 F. Supp. 3d 270, 280 (S.D.N.Y. 2024) (holding plaintiff adequately pled direct liability when the plaintiff received calls identifying the defendant); *Abramson v. Josco Energy USA, LLC*, No. 2:21-cv-1322, 2022 U.S. Dist. LEXIS 237792, at *6 (W.D. Pa. Aug. 1, 2022) ("Defendant might dispute those facts, but as now alleged, they go beyond formulaically reciting the elements of Plaintiff's cause of action, and the Court must take them as true at this early stage in the litigation."); *Dudley v. Vision Solar, LLC*, No. 21-659, 2021 WL 3077557, at *4 (D.N.J. July 21, 2021); *Atkinson v. Choice Home Warranty*, No. CV 22-04464, 2023 WL 166168, at *3 (D.N.J. Jan. 11, 2023). Indeed, courts have found in TCPA cases that using the same scripting on multiple generic telemarketing calls is sufficient to allege direct liability against a defendant.

Defendant's position requires the Court to infer that the first call (or possibly others prior to even that one) were entirely unrelated to the second call despite the temporal proximity, common subject matter, and shared objective of selling roofing products. The Court is not required to adopt Defendant's preferred inference. To the contrary, all reasonable inferences must be drawn in Plaintiff's favor. When viewed under the proper standard, the allegations plausibly support the conclusion that the calls were part of the same telemarketing effort conducted on behalf of Defendant. Whether discovery ultimately establishes that Defendant

directly placed the calls, employed multiple telemarketing vendors, or utilized agents to market its products presents factual questions that cannot be resolved on a Rule 12(b)(6) motion. Defendant's attempt to isolate one call and disregard the remaining alleged contacts improperly fragments the Complaint. When the allegations are considered as a whole, they clearly support the inference that more than one solicitation occurred, and that it occurred either by or on behalf of Sagax. Plaintiff has alleged sufficient facts to state a plausible TCPA claim, and dismissal is therefore inappropriate.

**B.  Courts routinely credit closely timed, similarly scripted calls as part of a single telemarketing effort, even where a later call is the one that reveals the caller's identity.**

Even setting the agency theory aside, courts have consistently held that when a plaintiff receives closely timed calls sharing a common subject matter, script, or purpose, the calls may plausibly be attributed to a single telemarketing effort, notwithstanding some initial ambiguity about which entity is responsible for each individual call. In *Toney v. Quality Resources, Inc.*, the court held that "the content and timing of the fourth call allow[ed] the court to draw a reasonable inference that [the defendant] made the first three calls" as part of the same effort. 75 F. Supp. 3d 727, 746 (N.D. Ill. 2014). In *Moore v. Pro Custom Solar LLC*, the plaintiff could confirm the caller's identity only on the seventh of seven calls sharing an identical script, yet the court held it could infer that the earlier calls were made by the same defendant because each call followed the same "telemarketing script." No. 21 C 4395, 2022 U.S. Dist. LEXIS 67347, at *6 (N.D. Ill. Apr. 12, 2022). And in *Bird v. Pro Star Builders, Inc.*, the court held it was "reasonable to infer" that the defendant was responsible for an earlier, unanswered call "from the same number" as a later, identified call. No. 2:22-cv-03610-JLS-JEM, 2022 U.S. Dist. LEXIS 215155, at *7–8 (C.D. Cal. Nov. 28, 2022) (collecting *Chapman v. Nat'l Health Plans & Benefits Agency, LLC*, 2022 WL 3130225, at *7 (E.D. Mich. Aug. 4, 2022), and *Spurlark v. Dimension Serv. Corp.*, 2022 WL

6

2528098, at *3 (S.D. Ohio July 7, 2022)); *Smith v. Getmehealthcare, LLC*, 2026 U.S. Dist. LEXIS 73341, at *3–4 (M.D. Fla. Apr. 17, 2026) (finding sufficiency where calls concerning the same product occurred within a short timeframe).

The same reasoning applies here. Plaintiff alleges *at least* two calls, with Plaintiff alleging "multiple" calls, occurring within eight minutes of each other, both concerning the sale of roofing services. ECF No. 1 ¶¶ 24-31. The first such call affirmatively identified by Plaintiff was "spoofed," but this does not foreclose the possibility that the Plaintiff received additional "spoofed" calls prior to that one of which he is unaware. ECF No. 1 ¶¶ 32-34. Most significantly, HDR expressly identified Sagax as its telemarketing provider. *Id.* ¶ 38. As in *Toney*, the timing, subject matter, and progression of the calls permit the reasonable inference that the calls were part of a common telemarketing campaign conducted by or on behalf of Defendant Sagax. *See Kemen v. Cincinnati Bell Telephone Company*, No. 1:22-cv-00152-DRC, *order granting leave to amend the complaint* (ECF 17) (May 24, 2023) ("As for the two unanswered calls, Kemen has plausibly alleged Cincinnati Bell placed them for a telemarketing purpose too. To start, unanswered calls can 'count' for TCPA purposes. … And the allegations here give rise to a plausible inference that Cincinnati Bell placed the two unanswered calls for a telemarketing reason.").

The same "practical realities" that animate those decisions apply with even greater force here, where the two calls occurred not weeks or months apart but eight minutes apart, on the same day, concerning the identical roofing job, involving the same salesperson and script. *Cunningham v. Watts Guerra, LLP*, No. SA-22-CV-363, 2024 U.S. Dist. LEXIS 93370, at *36 (W.D. Tex. May 23, 2024) (a TCPA claim "is plausible when it relies on reasonable inferences

drawn from the later-revealed identity of the caller[,]" and requiring more "would demand speculation by the plaintiff–and allow speculation by Defendant").

### C. At a minimum, whether Sagax is responsible for the second call is a question for discovery, not a motion to dismiss.

To the extent any doubt remains about precisely how the handoff between Sagax and HR functioned mechanically or whether Anthony called back through HDR's own system, a shared dialer, or some other arrangement between the companies, that type of information is "peculiarly within the possession and control of the defendant[s]." *Guadian v. DebtBlue LLC*, No. EP-23-CV-329-KC, 2024 WL 5184488, at *3 (W.D. Tex. Apr. 16, 2024). Sagax's motion improperly asks this Court to resolve, in Sagax's favor and before any discovery, a factual dispute about the mechanics and scope of its lead generation arrangement with HDR. Whether Sagax directly placed the second call, authorized HDR to do so, employed HDR as its agent to complete the transaction, or otherwise remains responsible "on behalf of" the engagement it initiated presents factual questions that cannot be resolved on a 12(b)(6) motion. To the extent that the Court finds Plaintiff's "spoofing" allegations inadequate, the proper remedy is likewise to grant leave to amend. Plaintiff has alleged sufficient facts to plausibly state a claim, and dismissal on this ground is therefore inappropriate.

Sagax's own cited authorities do not hold otherwise. *Hunsinger v. Dynata LLC*, 2023 U.S. Dist. LEXIS 37879, at *18 (N.D. Tex. Feb. 7, 2023), and *McCormick v. Ethos Techs.*, 2025 U.S. Dist. LEXIS 143114, at *3 (E.D. Tex. Jul. 21, 2025), state only the obvious proposition that a plaintiff must plead more than one call by or on behalf of the same entity, a proposition Plaintiff does not dispute. Neither case addresses, let alone forecloses, circumstances like these, where two calls occur minutes apart, involve a live transfer the moving defendant itself orchestrated, and a callback that resumes the identical qualification script.

## II. 47 C.F.R. § 64.1200(c)(2) WAS PROMULGATED UNDER 47 U.S.C. § 227(c), WHICH PROVIDES A PRIVATE RIGHT OF ACTION.

"The Do-Not-Call registry stands out as a model of clarity. It means what it says." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649 (4th Cir. 2019), *cert. denied* sub nom. *DISH Network L.L.C. v. Krakauer*, 140 S. Ct. 676 (2019); see also Compl., ECF No. 1 ¶ 2 (quoting same). Ignoring the Fourth Circuit's counsel in *Krakauer*, which upheld the certification of a TCPA 227(c) class for calls to numbers on the National Do Not Call Registry, as here, Defendant here posits something remarkable: every court and the thousands of decisions to have considered the propriety of the TCPA's private right of action for calls to numbers on the National Do Not Call Registry all got it wrong, since the TCPA's authorization for creation of the National Do Not Call Registry (allegedly) expired in 1992 and was not adequately reinstated by any subsequent authority, including Congress's mandate in 2003. That approach is at odds with the plain statutory history, Congressional intent, and the text of the relevant provisions, and is further contradictory to the Defendant's own canons of construction.

Sagax asks this Court to hold that decades of decisions enforcing that Registry through Section 227(c)(5)'s private right of action have all been wrong, because the FCC's 1992 rulemaking deadline in Section 227(c)(1) allegedly foreclosed the FCC from ever again promulgating Do Not Call Registry regulations "under" Section 227(c), and because one of the regulations Plaintiff sues under, 47 C.F.R. § 64.1200(c)(2), was instead promulgated under the Do Not Call Implementation Act of 2003, 15 U.S.C. § 6153, which Sagax contends contains no private right of action of its own. That argument fails.

9

A. *The text and structure of the TCPA confirm that only Section 227(c) could have authorized 47 C.F.R. § 64.1200(c)(2).*

As with any question of statutory interpretation, this Court's inquiry "begins with the text." *Ross v. Blake*, 578 U.S. 632, 638 (2016). The Do Not Call Registry regulation, 47 C.F.R. § 64.1200(c)(2), prohibits initiating "any telephone solicitation" to "a residential telephone subscriber who has registered his or her telephone number" on the Registry. As a federal regulation, it must have been promulgated under *some* part of the TCPA because "an administrative agency's power to promulgate legislative regulations is limited to the authority delegated by Congress." *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988). Only a handful of TCPA subsections authorize any rulemaking at all: Section 227(b)(2) (autodialers and prerecorded voices), Section 227(d)(1)–(3) (fax machines and related technical standards), Section 227(e)(3) (certain caller ID regulations), Section 227(i) (information-sharing with the FCC), and Section 227(c) (protecting "residential telephone subscribers' privacy rights"). None of the first four subsections has anything to do with a national do-not-call database; only Section 227(c) does, since it is the subsection under which Congress explicitly directed the FCC to "consider" whether to "require the establishment and operation of a single national database" of subscribers who object to telephone solicitations. 47 U.S.C. § 227(c)(3).

B. *Section 227(c)(1)'s initial rulemaking deadline did not permanently foreclose subsequent Do Not Call rulemaking under that subsection.*

Sagax's theory depends on reading the 1992 deadline in Section 227(c)(1) as a permanent bar on any future rulemaking under Section 227(c). Defendant claims that the FCC's failure to create the Do Not Call Registry in 1992, and Congress' failure to somehow reinstate its temporal authority under 47 U.S.C. § 227(c)(1) when it passed the Do Not Call Implementation Act in

10

2003, results in the lack of a private right of action to enforce the Do Not Call Registry. Nothing in the statute says so.

Defendant reasons that the time requirement in 47 U.S.C. § 227(c)(1) *forever barred* future rulemaking and/or promulgation of additional regulations, rendering 47 C.F.R. § 64.1200(c)(2) unenforceable under 47 U.S.C. § 227(c)(5)'s private right of action for violations of the regulations prescribed "under" that subsection. Defendant gets this threshold question wrong. The plain text of 47 U.S.C. § 227(c)(3) *does not* require the creation of a database by 1992, or "by" a certain date at all, contrary to Defendant's contention. 47 U.S.C. § 227(c)(3). To the contrary, Section 227(c)(1)(D) contemplated that the FCC might later identify "a need *for additional Commission authority* to further restrict telephone solicitations" and, in that event, directed the FCC to "*propose specific restrictions to the Congress,*" hardly language suggesting Congress intended to freeze Section 227(c) rulemaking after nine months. Congress was merely setting a date by which it desired *initial* rulemaking to be completed by, not barring *future* rulemaking after that date, and most certainly not in light of explicit Congressional authority authorizing such subsequent rulemaking in 15 U.S.C. § 6153. A statute is "alterable when the legislature shall please to alter it." *Marbury v. Madison*, 5 U.S. 137, 177 (1803); *see* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 278 (2012) ("The one body whose future actions a legislature has no power to affect is the legislature itself. Just as a corporate board of directors cannot adopt an immutable policy, legislators cannot make their laws irrepealable or disable themselves or their successors from taking action.").

To that end, Congress explicitly mandated the FCC to "consider whether making such practices mandatory, and imposing substantial sanctions for violations would increase their effectiveness to the point that they could satisfy the statutory requirements of this Act." House

11

Report 102–317, 102d Cong., 1st Sess. (1991) at 20. In other words, at the time it passed the TCPA, Congress made clear that the 1992 report it required was to be an *initial report*, not a *bar* to future rulemaking, as claimed by the Defendant. As the District of Maryland has observed:

> Subsection (c) also provided the FCC authority to 'require the establishment and operation of a single national database to compile a list of telephone numbers of residential subscribers who object to receiving telephone solicitations, and to make that compiled list and parts thereof available for purchase.' § 227(c)(3). The FCC did so when it created the national 'Do-Not-Call' registry. 47 C.F.R. § 64.1200(c)(2).

*Ford v. NaturaLawn of Am., Inc.*, No. CV 24-354 PJM, 2024 WL 3161762, at *3 (D. Md. June 25, 2024); *accord Cacho v. Amity One Debt Relief*, No. EP-24-CV-160-KC, 2024 WL 4594177, at *4 (W.D. Tex. Oct. 24, 2024). In any event, as will be discussed below, Congress explicitly authorized the promulgation of the regulation at issue here, "under the [TCPA,]" in 2003, when it passed the Do Not Call Implementation Act at 15 U.S.C. § 6153.

The FCC's own 1992 order confirms it viewed its determination as provisional. The FCC explained that a national database was infeasible "at the present time" given then-existing technology, and that "[i]f [its] current approach is not successful…it may be necessary to initiate a rulemaking proceeding to establish more stringent restrictions." *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CC Docket No. 92-90, Report and Order, 7 FCC Rcd. 8752, 8781-82 (1992). Sagax's reading – that Congress silently and permanently disabled the FCC from ever again exercising the very authority Section 227(c)(3) conferred – cannot be squared with the presumption that "the TCPA is a remedial statute" entitled to liberal construction. *Carlton v. PDR Network, LLC*, 80 F.4th 466, 479 (4th Cir. 2023).

## C. Congress explicitly directed the FCC to act under Section 227(c) when it passed the Do Not Call Implementation Act of 2003.

Even accepting, *arguendo*, that Section 227(c)(1)'s deadline somehow limited the FCC's authority after 1992, Congress reopened that authority in 2003. In the Do Not Call Implementation

Act, Congress directed the FCC to "issue a final rule pursuant to the rulemaking proceeding that it began on September 18, 2002, **under the Telephone Consumer Protection Act** (47 U.S.C. 227 *et seq*.)." 15 U.S.C. § 6153 (emphasis added). The accompanying House Report confirms that Congress understood it was directing the FCC to act pursuant to its existing TCPA authority, explaining that "[t]he FCC's do-not-call rules were created under the TCPA. *That statute explicitly gives the FCC the authority to set up a national do-not-call database*," and that the 2003 legislation simply directed the FCC "to complete its rulemaking" that it had already begun. House Report 108–8, 108th Cong., 1st Sess. (2003), at 4. And under *that* Congressional mandate, the FCC promulgated the instant regulation, 47 C.F.R. § 64.1200(c)(2), pursuant to its authority *under* the TCPA, and pursuant to the *explicit authority* Congress in 2003 gave the FCC to conduct rulemaking *"under"* the TCPA. 15 U.S.C. § 6153; s*ee also Siringi v. Parkway Fam. Mazda/Kia*, No. CV H-23-1499, 2023 WL 7130867, at *2 (S.D. Tex. Oct. 30, 2023) ("The Federal Communications Commission promulgated 47 C.F.R. § 64.1200[(c)(2)] under its authority to implement the Telephone Consumer Protection Act.").

The plain text of the 2003 Act, as well as the FCC's resultant rulemaking, cited below, belies the Defendant's contention that those rules "were not prescribed pursuant to a grant of authority by § 227(c)." The Act, by its plain text, does not permit for the promulgation of regulations *under the 2003 Act*, as claimed by Defendant, but rather *"under" the TCPA*. Under the ordinary meaning canon, Congress used the word "under" in the usual sense indicating derivation, subordination, or legal authority, rather than a looser association. Scalia & Garner 70. Thus, if the 2003 Act says "under the [TCPA,]" any regulation authorized thereunder must draw authority *from the TCPA*, not from any other related act, such as the Telemarketing Sales Rule or the 2003 Act itself, as Defendant claims. "[T]he meaning of a statute is to be looked for, not in any single section,

but in all the parts together and in their relation to the end in view." *Id.* at 168. Reading the 2003 Act as empowering regulations *under the TCPA* rather than *under the 2003 Act* (or under the Telemarketing Sales Rule) fits with how statutes, amendments, and administrative rulemaking works–the authorizing statute does not become the base statute or amendment, nor does the authorized rule. *See Alexander v. Sandoval*, 532 U.S. 275, 286, 291 (2001) (explaining genesis of a right of action). And it is the plain meaning evident from the text.

Because Section 227(c) is the only TCPA subsection authorizing regulations that protect "residential telephone subscribers' privacy rights" through a do-not-call database, it is the only subsection under which the FCC could have acted "under the [TCPA]" as Congress in 2003 directed. *Siringi*, 2023 WL 7130867, at *2; *Radvansky v. Kendo Holdings, Inc.*, 744 F. Supp. 3d 1314, 1321 & nn.3–4 (N.D. Ga. 2024) ("[T]he 2003 FCC [TCPA O]rder applies to section 227(c). . . . Therefore, [Plaintiff] may bring a case.".");  *Ford*, 2024 WL 3161762, at *3; *Cacho*, 2024 WL 4594177, at *4.

### D. *The FCC's own rulemaking record confirms it acted under Section 227(c).*

The 2003 rulemaking record removes any doubt. The FCC expressly stated that it was adopting the Registry "[p]ursuant to [its] authority under section 227(c)," and described the 2003 rule as a "second major proceeding" under the TCPA that "supplement[ed]" the company-specific do-not-call rules the FCC had adopted under that same subsection in 1992. *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991* ("2003 TCPA Order"), CG Docket No. 02-278, Report and Order, 18 FCC Rcd. 14014, 14017, 14034 (2003). Defendant's contention that Congress required the FCC to create a database by 1992, or else forever bar future rulemaking, including the 2003 Act *passed by Congress* authorizing such rulemaking under the TCPA, runs contrary to these canons of construction and common sense. "Absent

14

evidence to the contrary, we presume that an agency has acted in accordance with its regulations." *Medina Cnty. Env't Action Ass'n v. Surface Transp. Bd.*, 602 F.3d 687, 699 (5th Cir. 2010); *accord FCC v. Schreiber*, 381 U.S. 279, 296 (1965) (agencies are presumed to act properly and according to law).

Of particular import against the Defendant's argument, in the 2003 Order, the FCC *explicitly stated* that it was promulgating what would become 47 C.F.R. § 64.1200(c)(2): "Pursuant to our *authority under section 227(c)*, we adopt a national do-not-call registry that will provide residential consumers with a one-step option to prohibit unwanted telephone solicitations." *Id.* at 14034 (emphasis added). The FCC also reviewed the "other requirements of section 227(c)(1)," which, as described above, impose no time-restrictive language by that subsection's explicit statutory text. *Id.* at 14042; 47 U.S.C. § 227(c)(1). To adopt the Defendant's reading of 227(c) as time barred would render the mandate of the 2003 Act ineffective, in violation of the presumption against ineffectiveness, Scalia & Garner 63, as there is simply no other statutory subsection "under the TCPA" upon which Congress could direct the FCC to promulgate the regulations it ordered to implement the Do Not Call Registry, the entire purpose of which is to permit consumers to *lodge their objections against unsolicited telemarketing calls*.

The *only* authority "under" which the FCC could promulgate regulations "under the [TCPA]" that supports the Congressional mandate is § 227(c), which provides for the instant private right of action to "protect residential subscribers' privacy rights to avoid receiving telephone solicitations to which they object." The FCC said so itself, confirming it was doing so pursuant to § 227(c). *See Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1265 (11th Cir. 2019) (citing 47 C.F.R. § 64.1200(c)(2) and explaining that it was created pursuant to regulations

promulgated by the FCC). The 2003 TCPA Order invokes Section 227(c) dozens of times and nowhere suggests its authority was time-barred.

Defendant's position begs the question as to why Congress would direct the FCC to promulgate implementing regulations under the TCPA when it contends that Congress eliminated the FCC's authority to do so in 1992, or why Congress would do something it did not intend explicitly to do. Congress was clear when it directed the FCC to implement the newly-created Do Not Call Registry "under the [TCPA]." 15 U.S.C. § 6153. The FCC did so, promulgating 47 C.F.R. § 64.1200(c)(2) under the TCPA's consumer privacy provision, 47 U.S.C. 227(c), which contains a private right of action. Reading Section 227(c)(1)'s initial deadline to permanently strip the FCC of authority it plainly believed it possessed, and exercised, with Congress's explicit 2003 direction to do so "under the [TCPA]," finds no support in the statutory text, the legislative history, or the agency's own contemporaneous explanation of its actions. As the regulation sued under here, 47 C.F.R. § 64.1200(c)(2), was promulgated under 47 U.S.C. 227(c). There exists a private right of action for violations of the same, as Congress intended under 47 U.S.C. 227(c)(5).

## III.    A PRIVATE RIGHT OF ACTION EXISTS FOR VIOLATIONS OF THE CALLER ID REGULATION, 47 C.F.R. § 64.1601(e).

Sagax's final argument, that there is no private right of action for the Caller ID regulation at 47 C.F.R. § 64.1601(e) – relies on a line of authority, principally *Worsham v. Travel Options, Inc.*, No. 14-2749, 2016 WL 4592373 (D. Md. Sept. 2, 2016), that has been squarely and repeatedly rejected by every court to examine the question closely over the past year. Sagax's own cited authorities, *Griffin v. American-Amicable Life Ins. Co. of Tex.*, 2024 U.S. Dist. LEXIS 175344 (D. Or. Sept. 27, 2024); *Braver v. Clear Sky Fin., LLC*, 2023 U.S. Dist. LEXIS 252662 (W.D. Okla. Jan. 3, 2023); *Worsham v. Disc. Power, Inc.*, 2021 U.S. Dist. LEXIS 141842 (D.

16

Md. Jul. 29, 2021); and *Meyer v. Capital All. Grp.*, 2017 U.S. Dist. LEXIS 183690 (S.D. Cal. Nov. 6, 2017), either predate, or simply adopted without independent analysis, reasoning that even some of those very same courts have since abandoned.

### A.  *Dobronski v. Selectquote and its progeny mark a decisive and unanimous shift in the law.*

In *Dobronski v. Selectquote*, the Eastern District of Michigan undertook a comprehensive analysis of the genesis of the private right of action for caller ID claims under 47 C.F.R. § 64.1601(e). *Selectquote*, 773 F. Supp. 3d at 375. *Selectquote* represents the most comprehensive analysis of Section 1601(e) undertaken by a Court to date. Since *Selectquote*, *every single court* to consider a Section 64.1601(e) caller ID claim, including this Court's colleague in the Eastern District of Texas, *Starling v. Homeover Gen. Contractors*, No. 4:25-CV-993-JDK, 2026 WL 1649101, at *4 (E.D. Tex. June 8, 2026), has held that there is a private right of action for violations thereof. *Newell v. JR Cap., LLC*, 791 F. Supp. 3d 571 (E.D. Pa. 2025); *Dobronski v. CHW Grp., Inc.*, No. 24-CV-11649, 2025 WL 2426370, at *8 (E.D. Mich. Aug. 21, 2025), *motion to certify appeal denied*, No. 24-CV-11649, 2025 WL 3068732 (E.D. Mich. Nov. 3, 2025); *Dobronski v. Juliasangel Mktg., LLC*, No. 2:24-CV-12379-TGB-APP, 2025 WL 2659265, at *11 (E.D. Mich. Sept. 17, 2025); *Barton v. Bright Solar Marketing LLC*, No. 3:25-CV-05310-DGE, 2025 WL 2880136, at *5 (W.D. Wash. Oct. 9, 2025); *Dobronski v. Daraujo*, No. CV 25-10169, 2025 WL 3908484, at *8 (E.D. Mich. Dec. 1, 2025), *report and recommendation adopted*, No. 25-10169, 2025 WL 3708891 (E.D. Mich. Dec. 22, 2025); *Barton v. Am. Fam. Life Assurance Co. of Columbus*, No. 3:25-CV-05671-TMC, 2026 WL 25742, at *5 (W.D. Wash. Jan. 5, 2026); *Weingrad v. DaBella Exteriors, LLC*, No. 3:25-CV-396-SI, 2026 WL 496609, at *6 (D. Or. Feb. 23, 2026); *Novia v. Mobiz, Inc.*, No. 25-CV-11036-AK, 2026 WL 770036, at *7 (D. Mass. Mar. 18, 2026); *Novia v. Mobiz, Inc.*, No. 25-CV-11036-AK, 2026 WL

17

752181, at *4 (D. Mass. Mar. 17, 2026); *Carr v. Humana Inc.*, No. 3:25-cv-00476-DJH, ECF

No. 28 (W.D. Ky. Mar. 23, 2026); *Dobronski v. Uppleger*, No. 25-10168, 2026 WL 905121, at

*10 (E.D. Mich. Mar. 31, 2026).

B. **The same process of elimination that governs the Do Not Call Registry confirms Section 64.1601(e) was promulgated under Section 227(c).**

The reasoning driving this unanimous post-*Selectquote* consensus mirrors the analysis set

out in Point II, *supra*. Just five subsections of the TCPA authorize any rulemaking at all.

Sections 227(b)(2), (c), (d), (e)(3), and (i). Section 64.1601(e) could not have been promulgated

under Section 227(d), which is limited to fax machines and automatic dialing systems, not

telemarketing calls generally, nor Section 227(b), for the same reason. Section 227(e)(3), which

was enacted *after* Section 64.1601(e), so this is out. Finally, Section 227(i) concerns information

sharing with the FCC. *Selectquote*, 773 F. Supp. 3d at 376. That leaves only Section 227(c), the

very subsection Sagax itself contends it was not promulgated under.

The *Newell* court addressed itself why the subject regulation could not have been

promulgated under Section 227(d), and why, although technical, it is not a technological mandate:

> Further, § 227(d) only applies to telemarketing made using specific technologies – fax machines, automatic telephone dialing systems, and artificial and prerecorded voice messages – whereas § 64.1601(e) applies to a broader range of telemarketing calls, including traditional manually dialed telemarketing calls. The Third Circuit has cautioned that "our starting point [in regulatory interpretation] is to attempt reconciliation of seemingly discordant statutes and regulations." *LaVallee Northside Civic Ass'n v. Virgin Islands Coastal Zone Mgmt. Comm'n*, 866 F.2d 616, 623 (3d Cir. 1989). It is difficult to discern how § 64.1601(e) could have been lawfully promulgated under § 227(d) without exceeding the FCC's delegated authority. Section 64.1601(e) thus fits best under § 227(c), not (d).

*Newell*, 791 F. Supp. 3d at 579. The issue with all the authorities Defendant cites, including

*Worsham*, is that they did not consider under which section of the TCPA the subject regulation,

47 C.F.R. § 64.1601(e), was promulgated, nor did they reach their conclusion independently.

Instead of tussling with the statute and analyzing it, as in *Selectquote* and its progeny, each of the authorities Defendant cites simply rested on persuasive authority from other courts which themselves relied on faulty and underdeveloped reasoning and did not engage in extensive analysis as to the precise genesis of this right of action, which is 47 U.S.C. § 227(c).

C. ***The regulatory history confirms that Section 64.1601(e) was promulgated in the same 2003 order, under the same authority, as the Do Not Call Registry rules Sagax concedes are privately enforceable.***

Section 64.1601(e) was adopted in the very same 2003 TCPA Order that created the National Do Not Call Registry rules discussed in Point II, *supra*, the same order in which the FCC invoked Section 227(c) no fewer than 54 times. 18 FCC Rcd. 14014. The FCC explained that the caller ID rules would "improve the ability of consumers to *identify and enforce* do-not-call rights against telemarketers," because consumers were "frustrated by the failure of many telemarketers to transmit caller ID information," which "makes it *difficult for consumers to enforce*" the TCPA. *Id*. at 14068, 14118 (emphasis added). The 2003 TCPA Order references Section 227(c) no fewer than *54 times* and only one other section, Section 227(d), only *once*, in the context of a 1997 regulation requiring fax broadcasters to print their information on fax messages. *Id.* at 14134.

Section 64.1601(e) serves precisely the consumer protection functions Congress mandated in Section 227(c). It ensures that consumers receiving telemarketing calls know the identity of the telemarketer, enabling them to lodge do not call requests and exercise the very privacy rights § 227(c) was enacted to protect.  The FCC concluded that "the caller ID requirements at 47 C.F.R. § 64.1601(e) will go into effect on January 29, 2004," pursuant to its authority under Section 227(c). *Id*. at 14143. It would be incongruous, and contrary to the principle that Executive agencies do not create regulations absent an explicit authorization from

Congress, *Bowen*, 488 U.S. at 204, to hold that the very same rulemaking created a private right of action for the Do Not Call requirements adopted in Section 64.1200(c) but not for the Caller ID requirements adopted alongside them in Section 64.1601(e), under the identical statutory authority. *See Alexander*, 532 U.S. at 291 (2001) ("Agencies may play the sorcerer's apprentice but not the sorcerer himself."). Given that courts presume that agencies act lawfully and given that the instant regulation must rest on *some* subsection of § 227, once subsections (b), (d), (e), and (i) are eliminated, only (c) is left standing. And § 227(c)(5) also explicitly imparts consumers with a private right of action to enforce the regulations Congress explicitly authorized. Both the Do Not Call and Caller ID regulations are consumer privacy regulations. Both were promulgated under § 227(c). Both are enforceable under § 227(c)(5).

### D. Sagax's authorities reflect reasoning that courts have since abandoned.

Sagax's cited cases, including *Worsham*, *Griffin*, *Braver*, and *Meyer*, share a common defect because none engaged in independent analysis of which TCPA subsection actually authorized Section 64.1601(e) and each simply followed *Worsham*'s unexamined assumption that the regulation fell under Section 227(d). As the *Selectquote* and *Newell* courts recognized, that assumption cannot be squared with the statutory text, the regulatory history, or the FCC's own express invocation of Section 227(c) in adopting the rule. Given that every court to engage with the question on the merits since *Selectquote* has reached the same conclusion, this Court should do the same, and deny Sagax's motion as to Plaintiff's Caller ID claim.

### CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Sagax Media LLC's Motion to Dismiss in its entirety. In the alternative, to the extent the Court identifies any pleading deficiency, Plaintiff respectfully requests leave to amend.

RESPECTFULLY SUBMITTED AND DATED this July 10, 2026.

/s/ Andrew Roman Perrong
Andrew Roman Perrong, Esq.
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com

*Attorney for Plaintiff and the Proposed Class*

## CERTIFICATE OF SERVICE

I certify that I filed the foregoing via ECF on the below date, which will automatically send a copy to all attorneys of record on the case.

Dated: July 10, 2026.

/s/ Andrew Roman Perrong
Andrew Roman Perrong, Esq.

21