**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| **DAVID TOM,** individually and on behalf of all others similarly situated, <br><br> *Plaintiff,* <br><br> v. <br><br> **SAGAX MEDIA LLC d/b/a SERVICE DIRECT** <br><br> **AND** <br><br> **FLORIDA HIGH & DRY ROOFING, LLC**, <br><br> *Defendants.* | Case No. 1:26-cv-125 |

**DEFENDANT SAGAX MEDIA LLC'S REPLY BRIEF
IN FURTHER  SUPPORT OF ITS MOTION TO DISMISS**

Plaintiff's own allegations establish that he received only one telephone call from Sagax Media LLC d/b/a Service Direct's ("Sagax"). The Complaint unambiguously asserts that the second of the two telephone calls at issue came from Florida High & Dry Roofing ("HDR"), not Sagax. Because Plaintiff has not alleged that he received two or more telephone calls from or on behalf of Sagax, he lacks statutory standing to bring a claim under 47 U.S.C. § 227(c)(5). Contrary to the contention made by Plaintiff in opposition to the Motion to Dismiss (the "Opposition"), there is no inference to be drawn in favor of Sagax to reach that conclusion. It is apparent from the face of the Complaint itself. That is reason enough to dismiss the Complaint in its entirety. However, there are two additional reasons that the claims fail as a matter of law.

First, there is no private right of action for alleged violations of 47 C.F.R.§ 64.1200(c) and

1

the Opposition does not compellingly make the case otherwise. Sagax's statutory analysis demonstrates that the regulations were prescribed pursuant to 15 U.S.C. § 6153 of the Do Not Call Implementation Act ("DNC Act"), which does not provide a right of action. Plaintiff's argument that § 227(c) is the only section of the *TCPA* through which § 64.1200(c) could have been prescribed, or that the DNC Act used "under the TCPA" language somehow ratified the TCPA as the source of rulemaking power, does not persuasively refute the myriad examples in which § 64.1200(c) does not comply with the procedural limitations and substantive requirements imposed on the FCC by § 227(c).

Second, there is similarly no private right of action for alleged violations of 47 C.F.R. § 64.1601(e). An examination of the regulation, and the context within which it was prescribed, demonstrates that its technical and procedural requirements adhere much closer to the mandates of 47 U.S.C. § 227(d) given that regulations prescribed pursuant to § 227(c) are limited to requiring seller or telemarketing implementation of methods and procedures. A regulatory requirement to transmit CPN and ANI information is neither a method nor procedure under any sense of the word. It is a technical and procedural standard used in transmission of calls, consistent with 47 U.S.C. § 227(d). that section, however, does not afford a right of action.  As a result, Plaintiff's claim for alleged violation of § 64.1601(e) must be dismissed.

## ARGUMENT

I.      **PROVIDING PLAINTIFF ALL INFERENCES STILL RESULTS IN DISMISSAL**

   A.  **A Claim Under 47 U.S.C. § 227(c)(5) Is Not Plausibly Plead**

   47 U.S.C. § 227(c)(5) provides a limited right of action only to:

> "A person who has received ***more than one telephone call*** within any 12-month period ***by or on behalf of the same entity*** in violation of the regulations prescribed under this subsection . . ."

2

(emphasis added).

The Complaint facially demonstrates that Plaintiff alleges receipt of two telephone calls - one call from Sagax and a second call from HDR. (*see* ECF No. 1, ¶¶ 25, 28). The Court need not look any further to determine whether Plaintiff plausibly pleads a cause of action against Sagax pursuant to 47 U.S.C. § 227(c)(5) – he decisively does not. Because the Complaint's allegations demonstrate that he alleges receipt of only a single telephone call by or on behalf of Sagax, the Complaint must be dismissed.

No inference in Sagax's favor is required to glean from Plaintiff's express and unambiguous allegations that he only received a single telephone call from Sagax. The only inference to be drawn from the allegation(s) (1) at paragraph 25 of receipt of a call from Sagax and (2) at paragraphs 28-29 of receipt of a second call from employee of HDR, is that he received one call from one entity and one call from a different entity. Plaintiff's mischaracterization of his own allegations should not sway the Court – undermining his assertion that it is Sagax who casts "Anthony" as an HDR employee is the *Complaint's* allegation that "it was 'Anthony' calling back again and stated that there was a bad connection. Anthony, *Defendant High & Dry's employee* then attempted to sell the Plaintiff a roof. . ." ECF No. 1, ¶ 29 (emphasis added).

Succinctly stated, the facts as plead are that Plaintiff received a call from Sagax during which he was asked questions gauging his interest in roofing work and, after answering those questions, was then transferred to Anthony from HDR. When this first call was disconnected after the transfer, Plaintiff then received a second call from a different telephone number from someone who identified himself as Anthony and who Plaintiff asserts was HDR's employee that attempted to sell Plaintiff the roofing services he'd expressed interest in prior to being transferred to HDR on the first call. Sagax does not ask that the Court draw an inference that the two calls are completely

unrelated or that Sagax had no association with the first of the two calls. Rather, it simply asks that the Court reach the only plausibly conclusion from the facts as plead: while both calls may have been "by or on behalf of" HDR, only one of them was "by or on behalf of" Sagax. This is insufficient to support a claim against *Sagax* under § 227(c)(5).

Plaintiff's distortion of the law does not alter this unavoidable conclusion either. While he argues that both calls were part of the same telemarketing transaction, those words appear nowhere in § 227(c)(5), which unambiguously states "more than one telephone call . . by or on behalf of the same entity." Nor does Plaintiff's similar distortion of agency principles demand a different conclusion. While Plaintiff insinuates that agency theory can salvage his claims against Sagax, it is undisputed that he has alleged only that HDR is the principal and Sagax is the agent. ECF No. 1, ¶¶41-42, 44-46, 49. Any effort to impute the actions of the principal to the agent would be legally unsupported.

Sagax simply cannot be subject to liability for a call placed by another entity on that entity's own behalf. To that end, nearly every authority cited by Plaintiff supporting the supposed proposition that a single telephone call from Sagax gives rise to a colorable cause of action pursuant to § 227(c)(5) are not only out-of-circuit, but almost universally concerned alleged violations of §227(b). That section, however, *does* provide a right of action for one call. § 227(c)(5) does not. Therefore, the claims against Sagax pursuant to § 227(c)(5) fail and, must be dismissed accordingly.

B. <u>**The New Factual Allegations Introduced By the Opposition Must Be Disregarded**</u>

The Opposition attempts to supplement the Complaint's allegations through unsupported argument concerning scripts and the scope of the relationship between Sagax and HDR (*see* ECF No. 15, at pp. 6-8: "[W]hether Anthony [from HDR] called back through HDR's own system, a shared dialer, or some other arrangement between the companies . . ."). These facts are not plead

in the Complaint and must be disregarded in ruling on Sagax's Motion. *See McDavid v. Hous. Indep. Sch. Dist.*, 2021 U.S. Dist. LEXIS 191787, at *10 (S.D. Tex. Oct. 5, 2021) (rejecting plaintiff's attempt add allegations that were not pleaded in the complaint in response to a motion to dismiss to); *Coach, Inc. v. Angela's Boutique*, 2011 U.S. Dist. LEXIS 65876, at *6-7 (S.D. Tex. June 15, 2011) ("New facts submitted in response to a motion to dismiss to defeat the motion are not incorporated into the original pleadings.").

The new allegations also fail on their own merit for the same reasons set forth above - Plaintiff does not plausibly plead that Sagax exercised any authority over HDR, nor could he. Moreover, his reliance on *Guadian v. DebtBlue LLC*, 2024 U.S. Dist. LEXIS 70167 (W.D. Tex. Apr. 16, 2024) to support his plea for discovery is unavailing. The *Guadian* Court granted the motions to dismiss of two defendants because the plaintiff failed to allege any facts showing that they possessed any right to exercise interim control over telemarketing activities. *Id.*, at *10.

That is the exact scenario here and warrants the same result. Plaintiff's actually-plead allegations leave no room to entertain his open-ended fishing expedition request designed to salvage claims which aren't plead in a manner to survive dismissal as a matter of law. *See Lopez v. Salazar*, 2023 U.S. Dist. LEXIS 239115, at *3 (W.D. Feb. 9, 2023) (noting Fifth Circuit skepticism of open-ended fishing expeditions in response to motions to dismiss) (citing *Barnes v. Tumlinson*, 597 F. App'x 798, 799 (5th Cir. 2015) ("Discovery is not a license for the plaintiff to go fishing, and is limited to information that is relevant to any party's claim or defense.").

Plaintiff's unbridled, unsupported speculation and pleas for discovery in the absence of plausible allegations supporting his claims are insufficient to defeat Sagax's Motion.

**II.     THE COURT CAN PROPERLY DETERMINE THE SOURCE OF STATUTORY AUTHORITY FROM WHICH THE FCC PRESCRIBED 47 C.F.R § 64.1200(c)**

Through *McLaughlin*, the Supreme Court has permitted district courts to do what had previously been within the exclusive province of the Circuit Courts – examination of the suitability of FCC rules.  Whereas the Hobbs Act leaves the authority to vacate such rules to those Circuit Courts, *McLaughlin* restored district courts' authority to determine the applicability those rules to the enforcement proceedings they oversee. Thus, whereas Plaintiff characterizes Sagax's argument as one which seeks to upend decades of case law, it is more appropriate to view Sagax's argument as one which invites this Court to do what no court has previously done before due to the prior constraints of the Hobbs Act – examine within the context of this enforcement proceeding whether this Plaintiff has a right of action against Sagax for alleged violation 47 C.F.R. § 64.1200(c) given that the true statutory authority from which the FCC derived rulemaking power to prescribe the regulation was the DNC Act, rather than the TCPA.

**A.  Plaintiff's Statutory Interpretation Arguments Are Unpersuasive**

Plaintiff's various statutory interpretation arguments in support of the conclusion that § 64.1200(c) was prescribed pursuant to 47 U.S.C. § 227(c). None are compelling, however.

First is his argument that 47 U.S.C. § 227(c) is the only section of the TCPA pursuant to which the regulation could have been prescribed. This misunderstands Sagax's argument. While Sagax may agree that there is no other subsection of the *TCPA* which would have permitted the FCC to prescribe § 64.1200(c), Sagax disagrees that any section of the TCPA served as the statutory authority to prescribe those regulations. Just because something could be does not result in the conclusion that it must be. Moreover, it is not Sagax's argument that there was *no* statutory authority which provided the FCC power to prescribe the DNC regulations. It is that the statutory authority was something other than § 227(c) – specifically, 15 U.S.C. § 6153.

6

To support his conclusion that the DNC regulations "as a federal regulation [] must have been promulgated under *some* part of the TCPA," Plaintiff simply ignores or hand waves over the myriad procedural limitations and substantive requirements statutorily imposed by § 227(c) with which the DNC regulations do not comply. Chief among those was the deadline by which the statute mandated prescription of rules. Plaintiff argues that § 227(c)(3) did not impose any such deadline, but in so arguing ignores the fact that the subsection expressly invokes § 227(c)(2), which unambiguously imposed a deadline by which the rulemaking proceeding was to conclude and through which any such regulation was to be prescribed. ("The regulations required by paragraph (2) may require the establishment and operation of a single national database . . .).

Plaintiff also misinterprets § 227(c)(1)(d) to somehow mean that the statute granted perpetual rulemaking authority to the FCC because it instructed the FCC to consider whether the agency needed additional authority to restrict telephone solicitations. However, to reach this misinterpretation, Plaintiff again ignores the statutory text, which provides that if the FCC found that it needed such additional authority then it was required to propose specific restrictions *to Congress*. With respect to the DNC regulations, they were not sought through an additional request for authority or proposal to Congress for specific restrictions. They were only prescribed after separate act of Congress directed it to do so. *See* 15 U.S.C. § 6153.

Finally, Plaintiff argues that Congress affirmed § 227(c) as the DNC regulation's statutory authority because among the words included in 15 U.S.C. § 6153 is "under the Telephone Consumer Protection Act." The flaw in this reasoning is at least two-fold. First, even though the rulemaking proceeding was being conducted under the Telephone Consumer Protection Act does not mean that every regulation to have resulted from the proceeding was necessarily an agency

action authorized by the TCPA. One need look no further than *ACA Int'l v. FCC*, 885 F.3d 687 (D.C. Cir. 2018) or *Ins. Mktg. Coal. Ltd. v. FCC*, 127 F.4th 303 (11th Cir. 2025) for examples of FCC regulations undoubtedly prescribed through rulemaking proceedings under the TCPA which were nevertheless vacated on the basis of the FCC having exceeded any authority granted to it by the TCPA.

The second flaw in Plaintiff's reasoning is that, as explained in Sagax's moving papers, 15 U.S.C. § 6153 used "under the Telephone Consumer Protection Act" as a descriptor of the then-ongoing rulemaking proceeding as the vehicle through which Congress directed to prescribe the DNC regulations that the DNC Act gave the FCC authority to enact. ("the Federal Communications Commission shall issue a final rule pursuant to the rulemaking proceeding that it began on September 18, 2002, under the Telephone Consumer Protection Act (47 U.S.C. 227 et seq."). Had Congress intended for § 6153 to give its imprimatur to the TCPA as the statutory authority for yet-to-come FCC DNC regulations, 15 U.S.C. §§ 6151(a) and (b) demonstrate that it knew the language required. Those provisions gave Congress' imprimatur to the FTC's DNC regulations in no uncertain terms.

### B. 47 C.F.R. § 64.1200(c)(2) Was Not Promulgated Pursuant to Any Congressional Grant of Authority Under the TCPA

The TCPA gave discretionary authority to the FCC to establish the DNC Registry by a date certain. It timely exercised that discretion by making a well-reasoned, affirmative decision *not* to not to establish such a database. It was subsequent agency action from the FTC on January 29, 2003 which formally created the DNC Registry. *See* 68 FR 4580 (2003). The FCC's rules concerning compliance with the DNC Registry were not enacted until later that year when they were adopted on July 25, 2003. *See* 68 FR 44144 (2003).

The FTC's establishment of the DNC Registry, whose authority to do so was ratified by

Congress, further underscores that the TCPA was not the source of the FCC's rulemaking authority for the DNC regulations.  This is because § 227(c)(3)'s conferral of rulemaking authority states that the FCC's regulation were to require "the establishment <u>and</u> operation" of the database. The FCC's NDNC regulations did not do the former.

Thus, in addition to the time-specific procedural limitation of § 227(c)(2) with which the DNC regulations did not comply, and the myriad substantive requirements of § 227(c)(3) and (4) that they do not include (which Sagax identified and highlighted at ECF No. 12, pp 11-12), the FCC's DNC regulations did not do a basic requirement of § 227(c)(3). They did not establish the DNC Registry. Thus, in nearly every way, the FCC's DNC regulations violate the limited rulemaking authority provided by the TCPA. The only conclusion to draw from this is that the regulations derived from the grant of authority provided by 15 U.S.C. § 6153, whose only mandate was that the FCC's regulations be consistent with the FTC's regulations.

To cast doubt on this conclusion, Plaintiff cherry-picks language from a House Report in connection with the DNC Act. That same House Report, however, buttresses Sagax's argument. In it, Congress stated "[t]hat statute [the TCPA] explicitly gives the FCC authority to set up a national do-not-call database. In 1992, the FCC undertook a rulemaking, and after reviewing comments, determined that a national do-not-call list was too costly and burdensome at that time. The FCC instead opted to require telemarketers to maintain company-specific do-not-call lists" H.R. 108-8, 108th Cong., 1st Sess. (2003).

This is consistent with Sagax's argument – the TCPA gave the FCC discretionary authority to establish the DNC Registry, the FCC exercised that discretion to not establish it, and it took additional congressional action to have it established and effectuate the executive agencies' regulation of the database. Because that congressional action came in the form of a statute which

does not confer a private right of action for violations of the regulations prescribed thereunder, however, Plaintiff's claims for violation of § 64.1200(c) must be dismissed.

**III      THE FCC DID NOT CONCLUDE THAT THERE IS A PRIVATE RIGHT OF ACTION PURSUANT TO 47 C.F.R. § 64.1601(e)**

The FCC's 2003 TCPA Order which promulgated 47 C.F.R. § 64.1601(e) explicitly cast doubt on whether a right of action for violation of the regulation exists, stating that:

> "[t]he Commission declines to make any determination about the specific contours of the TCPA's private right of action. Congress provided consumers with a private right of action, "if otherwise permitted by the laws or rules of court of a State." 47 U.S.C. 227(c)(5). This language suggests that Congress contemplated that such legal action was a matter for consumers to pursue in appropriate state courts, subject to those courts' rules. The Commission believes it is for Congress, not the Commission, to either clarify or limit this right of action."

47 C.F.R. Parts 64 and 68, at ¶ 147 (2003).

Despite compliance with this regulation potentially having downstream privacy affects, 47 C.F.R. § 64.101(e) is a regulation which fundamentally concerns the technology utilized to route and identify telecommunications, including directives as to how telecommunications systems must format and transmit data (including CPN and ANI information) across public telephone networks.

As a result, it tracks much closer to the technical and procedural boundaries of 47 U.S.C. § 227(d), rather than "methods and procedures" which are to be implemented through the regulations prescribed pursuant to § 227(c)(2). And because 47 U.S.C. § 227(d) does not confer a private right of action for alleged violations of the regulation prescribed thereunder, Plaintiff lacks standing to assert a claim for alleged violation of 47 C.F.R. § 64.1601(e).

**<u>CONCLUSION</u>**

For the foregoing reasons, Sagax respectfully requests that the Court grant its Motion to Dismiss the Complaint, award Sagax fees and costs to the fullest extent permitted by law, and grant Sagax such further and additional relief as the Court deems just and proper.

DATED:  July 24, 2026

Respectfully submitted,

KLEIN MOYNIHAN TURCO LLP

*Attorneys for Sagax Media LLC d/b/a Service Direct*

By: /s/ *Neil E. Asnen*
Neil E. Asnen (admitted *pro hac vice*)
New York Bar. No. 4785184
450 7th Avenue – 40th Floor
New York, NY 10123
Telephone: (212) 246-0900
Email: nasnen@kleinmoynihan.com

-and-

VARTABEDIAN KATZ, HESTER & HAYNES

By: /s/ *Richard B. Roper*
Richard B. Roper
Texas Bar No. 17233700
2200 Commerce St. Ste 4200W
Dallas, TX 75201
Telephone: (817) 309-9092
Email: richard.roper@vkhh.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 24, 2026, I electronically filed with the Clerk of Court the foregoing document using the CM/ECF system which will send notification of such filing(s) to all counsel of record.

/s/ *Richard B. Roper*
Richard B. Roper

11